312 So.2d 890 (1975)
TOWN OF NEW ROADS
v.
Albert DUKES, Jr., et al.
No. 10238.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
*891 Francis Douglas Jewell, New Roads, Gordon A. Pugh, Breazeale, Sachse & Wilson, F. Charles McMains, Jr., Baton Rouge, for plaintiff-appellee.
C. Jerome D'Aquila, New Roads, for defendants-appellants.
Before LOTTINGER and CONVINGTON, JJ., and BAILES, J. Pro Tem.
BAILES, Judge Pro Tem.
In plaintiff-appellee's petition for injunctive relief from alleged illegal conduct on the part of the defendants herein, inter alia, the following allegations of fact were asserted: Louisiana Public Employees Council No. 17, AFSCME, AFL-CIO, requested the Town of New Roads to recognize it as the collective bargaining agent of the employees of the Town of New Roads, and that this request was denied by the Town of New Roads as not being in the best interest of either the Town or its employees. On the basis of other allegations in this petition, including alleged acts of picketing, work stoppage and violence, the district court issued a rule to the named defendants, who numbered about thirty, to show cause on a specified date and hour why a preliminary injunction should not issue as prayed for and according to law. Effective during the interim between the date of the order (August 30, 1974) and the time fixed for the hearing (September 9, 1974), the district court issued a temporary restraining order prohibiting the defendants therein, including Albert Dukes, Jr., and Thomas Nelson, appellants herein, from engaging, inter alia, in any picketing, maintaining pickets or massing or grouping in any number, on or by any property of the Town of New Roads, or on any of its public ways.
On September 7, 1974, the plaintiff filed a motion in the court a quo to have the defendant-appellants cited for contempt of the court for allegedly violating the terms of the temporary restraining order issued as stated above. Acting on this motion of the plaintiff, the court did on the same *892 date order the named defendants to appear and show cause on the 12th day of September, 1974, why they should not be held in contempt of the court for violating the terms of the temporary restraining order.
Through counsel, defendants moved to have the contempt proceedings transferred to the criminal docket and for a trial by jury, all under the provisions of LSA-R.S. 23:848. The trial court denied defendants' motion on the grounds that the plaintiff herein was not an employer within the provisions of LSA-R.S. 23:821 et seq., and that the cited statutes do not apply to the State or its political subdivisions. From this adverse ruling of the trial court, defendants appealed. We affirm.
In their brief, defendant-appellants argue that defendants were clearly having a labor dispute with plaintiff. LSA-R.S. 23:821 defines a labor dispute as follows:
"The term `labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer or employee, regardless of whether or not the disputants stand in the proximate relation of employer or employee."
Defendants further argue that the statutes of this State covering labor organization and disputes do not expressly exclude public employees from their terms and to hold such employees are excluded would be discriminatory.
Admittedly, there is no provision of the applicable labor law of this State which expressly excludes the political subdivisions of the state from the provisions of the law, likewise, there is no express inclusion of the political subdivisions of the state. If the statutes either expressly included or expressly excluded the political subdivisions of the state within the definition of "employer" there would be no necessity for interpretation. However, as the statute is silent in this respect, we must consider the rule of construction to determine whether the statute includes the state and the lesser political subdivision within the term "employer."
Addressing ourselves to the question of whether a fair interpretation of the statute requires the holding that the word definition of "employer" includes the state and its political subdivisions, the general rule of long standing is that neither the government, federal or state, nor any of its subdivisions, are included within the purview of a statute unless the legislative intent is clearly stated.
82 C.J.S. Statutes § 317, states:
"Neither the government, whether federal or state, nor its agencies are considered to be within the purview of a statute unless an intention to include them is clearly manifested; and the rule applies, or applies especially, to statutes which would impair or divest the rights, titles or interests of the government."
This rule is applicable in this state. While the instant case is one of first impression, by analogy we view the prior holdings of our courts that general laws relative to payment of interest are not applicable to the state or its agencies. See: State ex rel. Anderson v. Walker, 233 La. 687, 98 So.2d 153 (1957), and Boucher v. Doyal, 210 So.2d 75 (La.App. 1968).
It should be noted that LSA-R.S. 23:821 et seq., is almost identical in wording with the provisions of 29 U.S.C.A. §§ 103 thru 113, known as the Norris-LaGuardia Act. Particularly noteworthy is the similarity between definition of terms in R.S. 23:821 and those of 29 U.S.C.A. § 113. By the terms of the Norris-LaGuardia Act the federal government is neither included nor excluded.
In the case of United States v. United Mine Workers of America, 330 U.S. 258, *893 67 S.Ct. 677, 91 L.Ed. 884 (1947), a contempt proceeding brought by the United States against the United Mine Workers of America and the union executive, Lewis, for encouraging the miners to interfere by a strike with the operation of the mines and with the performance of governmental functions, the court stated:
[2,3] * * * There is an old and well known rule that statutes which in general terms divest pre-existing rights and privileges will not be applied to the sovereign without express words to that effect. * * *."
Aside from the applicability of the above stated rule of statutory construction, the legislature of this State in R.S. 23:822 enacted the following declaration of public policy:
"§ 822. Freedom of organization and other activities; declaration of policy
In the interpretation and application of this Chapter, the public policy of this state is declared as follows:
Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employee. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore, it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

In the comparable section of the Norris-LaGuardia Act (29 U.S.C.A. § 102), the public policy of the government is declared as follows:
"§ 102. Public policy in labor matters declared
In the interpretation of this chapter and in determining the jurisdiction and authority of the courts of the United States, as such jurisdiction and authority are defined and limited in this chapter, the public policy of the United States is declared as follows:
Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definitions of and limitations upon the jurisdiction and authority of the courts of the United States are enacted."
In United States v. United Mine Workers of America, supra, the court further stated:
"But we need not place entire reliance in this exclusionary rule. Section 2, which *894 declared the public policy of the United States as a guide to the Act's interpretation, carries indications as to the scope of the Act. It predicates the purpose of the Act on the contrast between the position of the `individual unorganized worker' and that of the `owners of property' who have been permitted to `organize in the corporate and other forms of ownership association', and on the consequent helplessness of the worker `to exercise actual liberty of contract * * * and thereby to obtain acceptable terms and conditions of employment.' The purpose of the Act is said to be to contribute to the worker's `full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he should be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representative * * * for the purpose of collective bargaining * * *.' These considerations, on their face, obviously do not apply to the Government as an employer or to relations between the Government and its employees."
The almost identical provisions of R.S. 23:822 (R.S. 23:821 et seq. being sometimes referred to as the Little Norris-LaGuardia Act) and 29 U.S.C.A. § 103 cannot be overlooked. While the construction given to Section 103 by the Supreme Court of the United States is not controlling of whether the appellee herein, as a political subdivision of the state, is to be considered an "employer" within the terms of the statute, it must be persuasive.
Also, in N.L.R.B. v. Roywood Corporation, 429 F.2d 964 (5 Cir. 1970), at page 970, the court held:
"[5,6] It is a principle of statutory construction, however, that legislation will not be presumed to impair the power of the sovereign unless it affirmatively appears that it was the intent of the legislature to have it do so. * * *."
Another case, worthy of consideration and comparison is Nutter v. Santa Monica, 74 Cal.App.2d 292, 168 P.2d 741 (1046).
In Nutter, the question before the court was whether Section 923 of the California Labor Code (the wordage of which is identical to LSA-R.S. 23:822) made the state policy with reference to labor relations applicable to the state or its political subdivisions.
The plaintiffs therein were members and representatives of the Brotherhood of Railroad Trainmen who had designated the Brotherhood as their collective bargaining agent. The defendants were the commissioners and members of the city council of the City of Santa Monica which operated a local and intercity motor coach line serving the public in the City of Santa Monica, with one branch extending into the westerly section of the City of Los Angeles. The coach line employees were members of Lodge No. 22 of the Brotherhood of Railroad Trainmen. The defendants had refused to recognize, in writing or otherwise, the Brotherhood as the representatives of the employees for the purpose of negotiating a contract.[1]
The purpose of the action was to obtain mandatory injunction requiring defendants to recognize the Brotherhood and the individual plaintiffs, as members of the Brotherhood, as the bargaining agents for the bus operators and requiring defendants to bargain collectively with the plaintiffs and the Brotherhood, to the end that a voluntary agreement might have been reached.

*895 The opinion states:
"The theory of plaintiffs is that such legal duty exists by virtue of certain sections of the Labor Code and that the court may, under its general equity powers, compel the defendants to perform that duty. The defendants maintain that the Labor Code sections have no application to municipal corporations, they deny that those sections impose upon employers a legal duty to enter into labor contracts, or to bargain collectively for the purpose of negotiating the terms of labor contracts, and they urge other defenses to the action."
The conclusion of the court was that:
"[10-12] The language of section 923 is broad enough to include state and municipal government, but general language in a statute is not sufficient, of itself, to indicate an intention to make it applicable to government. Where a statute is not expressly made applicable to government, it is for the courts to determine whether the Legislature intended it to apply to government. In making that determination, it is proper to consider all matters which, under the rules of statutory interpretation, shed light upon the legislative intention. It is well established that general terms of a statute will not be construed as including government if the statute would operate to trench upon sovereign rights, injuriously affect the capacity to perform state functions or establish a right of action against the state. (Citations omitted) In Balthasar v. Pacific Elec. Ry. Co., supra [187 Cal. 302, 202 P. 37, 19 A.L.R. 452], the court quoted from Associate Justice Story of the Supreme Court of the United States, sitting in the First Circuit, in the case of United States v. Hoar, Fed. Cas. No. 15, 373, 2 Mason, 311, as follows: `Where the government is not expressly or by necessary implication included, it ought to be clear from the nature of the mischiefs to be redressed, or the language used, that the government itself was in comtemplation of the legislature, before a court of law would be authorized to put such an interpretation upon any statute. In general, acts of the legislature are meant to regulate and direct the acts and rights of citizens; and in most cases the reasoning applicable to them applies with very different, and often contrary force to the government itself. It appears to me, therefore, to be a safe rule founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless the construction be clear and indisputable upon the text of the act. * * *."
To hold that the State, and its agencies and political subdivision, are employers under the Act would be tantamount to the legislature declaring that the "unorganized worker" must be protected from the State and to need a representative to collectively bargain for him with the State. We cannot hold this to be a part of the declared public policy of the State. It would be an impairment of sovereign rights to hold that the State or its political subdivisions are employers within the terms of this statute and that it submit to collective bargaining with its employees.
The foregoing leads us to the conclusion that the plaintiff-appellee, Town of New Roads, is not an employer within the terms and intendment of R.S. 23:821 et seq., and that the provisions of R.S. 23:848 which details the procedure to follow in contempt proceedings arising under the said statute are not applicable to the instant contempt proceeding.
Accordingly, the judgment of the trial court denying the appellants' motion to transfer the contempt proceedings instituted against them from the civil docket to the criminal docket and for trial under the procedure of LSA-R.S. 23:848 is affirmed, at appellants' cost.
Affirmed.
NOTES
[1] The Louisiana legislature enacted LSA-R.S. 23:890, specifically authorizing municipalities, transit authorities or other authorities to recognize collective bargaining agents of operating and other transit personnel and to enter into contract through such representatives relative to employment conditions. This legislation was passed in 1964, but apparently at the time of Nutter (1946) California had no such labor code provision.