[1] Plaintiffs, Charles Reppond and Mary Reppond, filed suit against the defendants, City of Denham Springs and Charles Dugas, for damages allegedly caused by defendants' violation of the Louisiana Anti-Trust statute, LSA-R.S. 51:121, et seq. The defendants filed exceptions of no cause of action which the trial court sustained. Plaintiffs appeal the dismissal of their suit. We reverse.
[2] FACTS
[3] The plaintiffs have owned and operated a wrecker towing service in the Denham Springs area since November of 1987. Plaintiffs allege that their towing service has been adversely affected by the customary practice of the City of Denham Springs, through its police department, of using, almost exclusively, the wrecker services of Dugas within the city. Plaintiffs allege that a contract, approved by the Board of Alderman, exists between the City and Dugas; that defendants are engaged in a course of conduct which amounts to a combination or conspiracy in restraint of trade in violation of LSA-R.S. 51:122; and that such conduct also constitutes monopolization, or an attempt or conspiracy to monopolize, in violation of LSA-R.S. 51:123. In attempting to establish a claim under LSA-R.S. 51:123, the plaintiffs made the following pertinent allegations in their petition.
[4] 3.
[5] Petitioner would show that the Defendant city of Denham Springs through its Police Department makes calls requesting wrecker services in the process of impounding vehicles, moving stalled vehicles off the streets and highways, moving wrecked vehicles off the streets and highways, and for storage of other property.
[6] 4.
[7] Petitioner would further show that it is a customary practice of the City of Denham Springs when requesting wrecker services, except when a special request is made, to call nearly exclusively defendant Dugas. Based on information and belief, Petitioners aver that sometimes an owner requested wrecker service will not be summoned but instead defendant Dugas will be called.
[8] 5.
[9] This has been a practice in the city of Denham Springs for several years, and is an approved practice by the Board of Alderman and enforced by it's (sic) Chief of Police.
[10] 6.
[11] On or about January 15, 1988, Petitioner Charles Reppond approached the Chief of Police for the City of Denham Springs, and requested that Petitioner's business be included on a rotating call list for *West Page 226 
wrecker services when the City of Denham Springs had the need therefor.
[12] 7.
[13] At that time Petitioner was told that he would never be called to handle any wrecks for the City of Denham Springs, when the City of Denham Springs initiated a request for wrecker service.
[14] 8.
[15] Subsequent thereto, Petitioner again approached Chief Jones at which time Chief Jones informed him that a Contract existed between the City of Denham Springs and the Defendant Charles Dugas to provide such wrecker service in which defendant Dugas was to be the exclusive wrecker service company for the City of Denham Springs.
[16] 9.
[17] On May 30, 1988, Petitioner addressed the Board of Alderman of the City of Denham Springs making a request that they pass an ordinance instituting a rotating wrecker call list to be used in the future. Also at that time the Board of Alderman were requested, pending the implementation of the ordinance, to institute a temporary rotating list program to allow other wrecker companies to be called by the City of Denham Springs. This request was rejected.
[18] . . . .
[19] 11.
[20] That the city of Denham Springs and Charles Dugas have attempted and engaged in a monopoly scheme affecting part of the trade and commerce of the State of Louisiana by substantially lessening the competition afforded by petitioners.
[21] 12.
[22] Plaintiffs would further show that although Charles Dugas was not required to furnish any kind of insurance coverage for handling wrecked vehicles, the council said that insurance would be one of the requirements that they would have to have to be met before Plaintiffs would be allowed to haul or tow any vehicles from the streets of Denham Springs or placed on any rotating wrecker call list.
[23] The trial court sustained the exception of no cause of action as to the City based upon its finding that the Louisiana Anti-Trust laws are not applicable to municipalities in the exercise of their police powers. The court also sustained an exception of no cause of action as to Dugas because plaintiffs' petition contained merely legal conclusions in regard to Mr. Dugas. Plaintiffs allege that the trial court erred in sustaining the exceptions of no cause of action against both defendants, and in failing to allow plaintiffs time to amend their petition in order to state a cause of action.
[24] EXCEPTION OF NO CAUSE OF ACTION
[25] The peremptory exception of no cause of action tests the legal sufficiency of the petition. In reviewing a judgment on an exception of no cause of action, an appellate court must accept all well pleaded allegations of the plaintiff's petition as true.Haskins v. Clary, 346 So.2d 193 (La. 1977). Every reasonable interpretation must be accorded its language in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity to present his evidence. Id. However, no evidence is admissible at any time to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931.
[26] The City contends, in brief, that it is exempt from the provisions of the antitrust statute because the term "person" in LSA-R.S. 51:123 does not include "municipality" within its meaning. The city also contends that a similar interpretation should be given to the term "any contract" in LSA-R.S. 51:122
because it should be read in pari materia with Section 123.
[27] This exemption argument is an affirmative defense to an otherwise well pleaded claim under LSA-R.S. 51:122 and LSA-R.S.51:123. Although LSA-C.C.P. *West Page 227 
art. 931 prohibits the introduction of evidence to support or controvert the objection that the petition fails to state a cause of action, the court may consider affirmative defenses which are disclosed by the petition itself.Dickerson v. Kemp, 540 So.2d 467 (La.App. 1st Cir. 1989). "When an exception of no cause of action is based on an affirmative defense, the exception must be overruled `unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based.'"Owens v. Martin, 449 So.2d 448, 452 (La. 1984), quotingHaskins v. Clary, 346 So.2d 193, 195 (La. 1977).
[28] LOUISIANA ANTI-TRUST STATUTE
[29] The plaintiffs allege violations by the defendants of the following statutes.
[30] LSA-R.S. 51:122
[31] Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.
[32] Whoever violates this Section shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years or both.
[33] LSA-R.S. 51:123
[34] No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state.
[35] Whoever violates this Section shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years, or both.
[36] The defendant, City of Denham Springs, alleges in its exception of no cause of action that the City is exempt from the provisions of the Louisiana Anti-Trust statute because the statute prohibits only citizens from engaging in anti-competitive or monopolistic practices and that the State has articulated a policy which exempts municipalities from this legislation and authorizes the regulation of wrecker services by the City.
[37] It is the City's contention that we should find it immune from liability under LSA-R.S. 51:122 and 51:123, based purely on the language of the statutes.[1] The City argues that the term "person" in LSA-R.S. 51:122 does not include municipalities. In support of its argument the City cites Barcena v. City of NewOrleans, 221 La. 652, 60 So.2d 74 (1952), and Hays v.Louisiana Wild Life and Fisheries Com'n, 165 So.2d 556 (La. App. 1st Cir. 1964), writs denied, 246 La. 855, 167 So.2d 672,246 La. 855, 167 So.2d 672 (1964). In Barcena the Court interpreted the phrase "person, individual, firm or corporation" in LSA-R.S. 23:631 to exclude governmental agencies. In Hays this court followed Barcena and held that the amendment to LSA-R.S. 23:631 which subsumed the terms "individual, firm or corporation" into the all encompassing term "person" did not apply to public bodies. We note thatBarcena and its progeny have since been expressly overruled by Stafford v. City of Baton Rouge, 403 So.2d 733
(La. 1981), wherein the court noted that the Barcena
decision was made when governmental immunity prevailed in the state. Since the Barcena decision, governmental immunity has been rejected both jurisprudentially and by express provision in the 1974 Constitution. Board of Comm'rs of the Port of NewOrleans v. Splendour Shipping Enterprises Co., 273 So.2d 19
(La. 1973); (La.Const. Art. XII, Sec. 10(A)).
[38] The language in LSA-R.S. 51:122, including "every contract," is sweeping in its breadth. Louisiana Power Light v. United Gas Pipe Line, 493 So.2d 1149 (La. 1986). A conclusion that the term "any person" in Section 123 limits the scope of both sections cannot be supported with *West Page 228 
rationality. Both terms are broad in their scope; without a compelling indication to the contrary, they should encompass municipalities within their meaning. This is consistent with the dual personality of a political subdivision. LSA-C.C. art. 24 defines persons as either natural or juridical. Comment c to art. 24 states in pertinent part:
[39] A public person is governed by rules of public law; a private person is governed by rules of private law. The state and its political subdivisions have dual personality. At times they act as public persons in a sovereign capacity and at times as private persons in the capacity of a citizen or a private corporation. . . .
[40] Furthermore, the interpretation of a term within a statute is not merely a question of semantics, but requires an inquiry into the reason, purpose, context and legislative history of the statute as well as other laws relative to the same subject matter.
[41] A review of the legislative history of the Louisiana Anti-Trust Legislation reveals that the first legislation prohibiting trusts and conspiracies in restraint of trade and a prohibition of monopolies was passed by La.Acts No. 86 in 1890, the same year the federal Sherman Antitrust Act was enacted. Since that time the legislation has changed very little. See Louisiana Power Light v. United Gas Pipe Line, 493 So.2d 1149 (La. 1986).
[42] It is apparent that the concerns which spurred the enactment of the federal Sherman Antitrust Act are the same as those which influenced Louisiana's adoption of virtually identical antitrust legislation. As noted in Louisiana Power Light v. United Gas Pipe Line, 493 So.2d at 1152, 1153: "[A]ntitrust legislation is founded on basic American conservatism, which seeks ways to divide, limit, and diffuse power, whether it be governmental or not." (Footnotes omitted.)
[43] We find that concerns for preserving competition are equally valid whether the person conspiring to monopolize or contracting to restrain trade is a municipality or a private citizen. Because municipalities perform many functions in both a private and a public sense, it would be imprudent to categorically reject the applicability of the anti-trust statutes to every act of such governmental entities. We believe the better approach is to provide immunity from the anti-trust statutes to local governments only when they are acting pursuant to a state policy to displace competition with regulation or monopolistic public service.
[44] In this regard we find persuasive the federal jurisprudence interpreting the Sherman Antitrust Act.[2]
[45] FEDERAL JURISPRUDENCE
[46] The landmark case of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), established an exemption from the federal anti-trust laws for a state or its officers or agents when engaged in activities directed by its legislature.[3]
[47] Subsequent to the Parker decision, two Supreme Court opinions have restricted the availability of anti-trust immunity to local governments.[4] In City of Lafayette, La.v. Louisiana Power Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), the Supreme Court held that the "state action" immunity established in Parker v. Brown did not automatically extend to local governments; instead, the Court *West Page 229 
determined that local government anti-trust immunity is dependent upon whether the conduct alleged to be anticompetitive was performed pursuant to a state policy to displace competition with regulation or monopolistic public service. The court concluded that "an adequate state mandate for anticompetitive activities of cities and other governmental units exists when it is found `from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of.'" City of Lafayette, La., 98 S.Ct. at 1138.
[48] Thereafter, in Community Communications Co. v. City ofBoulder, Colo., 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), the Supreme Court held that a state's grant of homerule powers to a local government was insufficient authorization by the state to cloak the local government with anti-trust immunity. The Boulder court explained that in order for the action of a local government to constitute the action of the state itself, the local government's action had to be in furtherance or implementation of a "clearly articulated and affirmatively expressed," state policy.[5]
[49] We conclude that sound reasoning supports the approach taken by the federal jurisprudence, and find that immunity from the state anti-monopoly statutes will only extend to local government activities which are performed pursuant to a state policy to displace competition with regulation or monopolistic service. Such a determination must necessarily be on a case by case basis.
[50] In its exception of no cause of action the City alleges that it was acting pursuant to an articulated state policy set forth by the legislature in LSA-R.S. 45:180.1 F, which provides:
[51] Municipalities and parishes may, by ordinance, regulate, control, supervise and govern the business of operation and use of wreckers and towing devices in the manner provided under this section until such time as the public service commission shall pass uniform regulations applicable thoughout (sic) the state; provided that the authority herein granted to parishes shall not extend to such businesses within the corporate limits within any municipality lying within the parish. . . .
[52] We find that LSA-R.S. 45:180.1 F does not govern the activities involved in the instant case. The statute deals solely with the regulation of wrecker services and does not deal with an agreement by the city, purportedly under its police powers, with a private firm. Compare, LSA-R.S. 33:4791.1, and LSA-R.S.33:4792, which exclude local government from antitrust liability for activities relating to ambulance services and privately operated for-hire vehicles providing passenger transportation services, respectively. *West Page 230 
[53] Because we find that the Louisiana Anti-Trust statute does not per se exempt municipalities from liability, nor does the petition disclose a state policy to displace competition with regulation or monopolistic service with regard to the hiring of wrecker services for the City, we conclude that the trial court erred in sustaining the City's exception of no cause of action.
[54] The trial court also sustained Dugas' exception of no cause of action concluding that plaintiff's petition failed to contain allegations referring to Mr. Dugas' ability to control prices and to exclude competition from the market.
[55] To state a claim under LSA-R.S. 51:122, the plaintiff is required to allege that the defendant is a party to a contract which results in an unreasonable restraint of trade. In order to state a claim under LSA-R.S. 51:123, the plaintiff is required to allege that the defendant or defendants either attempted to monopolize or conspired with any other person to monopolize any part of the trade or commerce within this state.
[56] "The petition must set forth material facts upon which the cause of action is based. Conclusions of law or fact will not be considered." Board of Examiners v. Neyrey, 542 So.2d 56, 64 (La.App. 4th Cir.), writ denied, 548 So.2d 1231
(La. 1989). When a pleading states a cause of action as to any ground or a portion of the demand, the exception must be overruled. Rodriguez v. American Bankers Ins. Co. ofFlorida, 386 So.2d 652 (La. 1980).
[57] LSA-C.C.P. art. 934 provides that "[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. . . ." (Emphasis added.) The trial court erred in refusing such an amendment.
[58] Accordingly, the trial court judgment sustaining the exception of no cause of action against the City of Denham Springs is reversed. Furthermore, the judgment sustaining the exception of no cause of action against Charles Dugas is affirmed with leave to amend. This case is remanded for further proceedings in accordance with the views expressed herein. Costs of this appeal in the amount of $250.00 are to be borne by defendant City of Denham Springs and plaintiffs/appellants.
[59] REVERSED IN PART, AFFIRMED IN PART AND REMANDED.
[1] The City also contends that we should follow the reasoning set forth by this court in Town of New Roads v. Dukes,312 So.2d 890 (La.App. 1st Cir. 1975), wherein the court determined that the Town of New Roads was not an employer within the provisions of LSA-R.S. 23:821. In Dukes this court concluded that neither the government, federal or state, nor any of its subdivisions, are included within the purview of a statute unless the legislative intent is clearly stated. This reasoning has been expressly overruled in Davis v. Henry,555 So.2d 457, 461 (La. 1990).
[2] Although the federal jurisprudence interpreting the Sherman Antitrust Act is not controlling, it may be used as persuasive interpretation of our own state anti-trust statute. LouisianaPower Light v. United Gas Pipe Line, 493 So.2d 1149
(La. 1986).
[3] The court specifically noted that it was not faced with the question of the state or its municipality becoming a participant in a private agreement or combination by others for restraint of trade.
[4] We note that although the injunctive provisions of the Sherman Antitrust Act are applicable to local governments, the damages provisions have been legislatively prohibited by the Local Government Anti-Trust Act. 15 U.S.C. § 34 et seq. (98 Stat. 2750 (1984)). See Jefferson Disposal Co. v. Parish ofJefferson, La., 603 F. Supp. 1125 (E.D.La. 1985).
[5] Two federal district court cases have applied the federal jurisprudence to the Louisiana state anti-trust statute, holding that the state statute is applicable to local governmental agencies. In Airline Car Rental v. Shreveport AirportAuthority, 667 F. Supp. 293 (W.D.La. 1986), the plaintiff, a nontenant rental car business, filed suit against the Shreveport Airport Authority, challenging a resolution imposing charges on entities which did not have contracts with the Authority, but which nevertheless used airport facilities in furtherance of commercial enterprises. Defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted, arguing that it was exempt from federal and state anti-trust claims under the Parker doctrine. Finding that this was an affirmative defense to the anti-trust claims, the court concluded that the mere status as governmental entity is insufficient for exemption from the Sherman Act. Instead the plaintiff would have had to allege that the defendant was acting as sovereign `pursuant to state policy to displace competition with regulation or monopolize public service' in order for the court to dismiss the claim on a 12(b)(6) motion, for then the affirmative defense would clearly appear on the face of the pleadings. The court went on to state that for the same reasons articulated for the federal anti-trust claim, the state anti-trust claims also would not be dismissed. In Hyde v. Jefferson Parish Hospital Dist. No. 2,513 F. Supp. 532 (E.D.La. 1981), rev'd, 686 F.2d 286 (5th Cir. 1982), rev'd and remanded, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984), a physician-anesthesiologist filed suit against the defendant hospital for denial of his application for admission to the hospital medical staff. The court held that the hospital's exclusive contract with a professional medical corporation, to provide anesthesia services was reasonable and not in violation of federal or state laws.