**Robin FREE and Renee Free,
Plaintiffs–Appellants,**

**v.**

**ABBOTT LABORATORIES, INC., Bristol–Myers Squibb Company, Inc., and Mead Johnson & Company, Defendants–Appellees.**

No. 97–31341.

United States Court of Appeals,
Fifth Circuit.

Jan. 19, 1999.

Daniel Adam Small, Matthew F. Pawa, Michael D. Hausfeld, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Patrick W. Pendley, Plaquemine, LA, for Plaintiffs–Appellants.

Frank Brian Cicero, Jr., Craig A. Knot, Leslie M. Smith, Kirkland & Ellis, Chicago, IL, William R. D'Armond, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Abbott Laboratories, Inc.

John M. Landis, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, LA, for Defendants–Appellees.

Max Rees Shulman, Cravath, Swaine, et al., New York City, Phillip A Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, LA, for Bristol Myers-Squibb Co., Inc. and Mead Johnson & Co.

Jane Bishop Johnson, Louisiana Dept. of Justice, Baton Rouge, LA, for State of Louisiana, Amicus Curiae.

Before REYNALDO G. GARZA, JONES and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In this second appeal generated by an antitrust class action against baby-formula manufacturers, appellants renew their argument that the district court's exercise of diversity jurisdiction was improper because their claims did not satisfy the amount in controversy requirement of 28 U.S.C. § 1332 (1993). They alternatively contend that the district court erred in ruling that Louisiana antitrust law denied them standing due to their status as indirect purchasers. Since the precise issue of jurisdiction was decided by this court before, the law of the case prevents its being reconsidered. In addition, we have determined that the indirect purchaser question and the interstate/intrastate conspiracy question must be certified to the Louisiana Supreme Court because they represent important state antitrust law policy decisions for which no controlling precedent exists. Notwithstanding the certification, we affirm the district court's dismissal of the Frees' other claims.

## PROCEDURAL HISTORY

Appellants filed their class action petition against appellees Abbott Laboratories, Bristol–Myers Squibb Company, and Mead Johnson & Company (collectively "Abbott Labs") in Louisiana state court alleging a price-fixing conspiracy. Appellees removed the case to federal district court. The Frees objected to the removal, arguing that the federal court lacked jurisdiction because they sought only $20,000 in damages and thus did not satisfy the $50,000 amount in controversy requirement then prescribed by 28 U.S.C. § 1332. The district court ruled that since Louisiana law provided for attorneys' fees to be awarded to the named plaintiffs and not the attorneys, the amount recoverable by the plaintiffs exceeded the $50,000 threshold. However, the court applied the *Colorado River* abstention doctrine and tried to remand the case back to state court.

On appeal, this court agreed with the district court's conclusion that diversity jurisdiction existed. *See In re Abbott Lab.,* 51 F.3d 524, 526, *on reh'g,* 65 F.3d 33 (5th Cir.1995). The court relied upon Article 595 of the Louisiana Code of Civil Procedure, which, together with § 51:137 of the Louisiana Revised Statutes, expressly awards attorneys' fees to the "representatives" of a class and the injured parties. *Id.* But the panel also held that the district court improperly abstained and accordingly vacated the remand to state court. *Id.* at 529–30.

Back in the federal district court, the Frees were unable to persuade the court that Louisiana antitrust law, unlike its federal counterpart, granted standing to indirect purchasers. The district court dismissed both the state law antitrust claims and the other state claims asserted by appellants.

## DISCUSSION

### A. Jurisdiction

Undeterred by this court's previous decision, appellants again contend that the federal courts' exercise of diversity jurisdiction was improper because their claims did not satisfy the amount in controversy requirement of 28 U.S.C. § 1332. The prior panel allegedly erred, according to the Frees, by crediting to them the class attorneys' fees for purposes of calculating the amount in controversy and by applying Louisiana's "procedural" attorneys' fee law (Art. 595) in a federal diversity case. Although appellants' argument bears on federal courts' jurisdiction, this is not an issue that we will reconsider.

■ Once a panel of this court has decided an issue of law or fact, the decision continues to govern all subsequent stages of the same case. *See United States v. Becerra,* 155 F.3d 740, 752 (5th Cir.1998); *Copeland v. Merrill Lynch & Co. Inc.,* 47 F.3d 1415, 1423 (5th Cir.1995). Known as the law of the case doctrine, this principle is necessary to bring finality to litigation and to discourage "panel shopping" by litigants. *See Becerra,* 155 F.3d at 752. While application of the doctrine is discretionary, this court will generally refuse to revisit a prior panel's decision unless "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work [sic] manifest injustice." *Id.* at 752–53. (quoting *North Miss. Comms., Inc. v. Jones,* 951 F.2d 652, 656 (5th Cir.1992)).

■ The Frees dispute application of the law of the case doctrine on two grounds. First, based on a recent *en banc* decision of this court, they urge that federal courts must constantly examine each case for subject matter jurisdiction, and if it does not exist, must remand the case to state court. *See Marathon Oil Co. v. Ruhrgas,* 145 F.3d 211 (1998), *cert. granted,* —— U.S. ——, 119 S.Ct. 589, —— L.Ed.2d ——, 67 U.S.L.W. 3273 (1998). The *Marathon* rule does not apply. Certainly, a federal court must always be satisfied that subject matter jurisdiction exists and must even raise the issue *sua sponte, Steel Co. v. Citizens For A Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998), but *Marathon* dealt with whether courts must initially determine subject matter jurisdiction before reaching the issue of personal jurisdiction. The Frees advocate a quite different rule of perpetual re-examination of precisely the same issue of subject matter jurisdiction. Other circuits have,

however, refused to recognize a "jurisdiction exception" to the law of the case doctrine. *See Ferreira v. Borja*, 93 F.3d 671, 674 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 972, 136 L.Ed.2d 856(1997) ("Surely a court that has decided that it has jurisdiction is not duty-bound to entertain thereafter a series of repetitive motions to dismiss for lack of jurisdiction."); *LaShawn v. Barry*, 87 F.3d 1389, 1394 (D.C.Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2431, 138 L.Ed.2d 193 ("[T]his court and other courts of appeals routinely apply law-of-the-case preclusion to questions of jurisdiction...."). We see no reason to deviate from the weight of authority.[1]

■ The Frees' second argument emphasizes that in a lawsuit removed from state court, as this was, "[if] at any time before final judgment it appears that the District Court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). And, reinforcing this language, the Supreme Court has observed that, "[d]espite a federal trial court's threshold denial of a motion to remand, if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 117 S.Ct. 467, 477, 136 L.Ed.2d 437 (1996) (emphasis in original) (citing Fed.R.Civ.P. 12(h)(3)). The Frees ignore, however, that our prior panel found that no jurisdictional defect burdens this case. That prior decision was based on a straightforward application of Louisiana law in a diversity context. Had the controlling law or facts changed, or had some glaring error in removal procedure been uncovered, *see e.g., Caterpillar, supra,* we would be obliged by the foregoing authorities to reassess jurisdiction. To this extent, an issue of jurisdiction imposes a more rigorous inquiry than the ordinary discretion attendant to the law of the case doctrine. But none of the warning signs is present here.

The only ground of re-examination urged by the Frees, other than their complaint that the prior panel got it wrong on jurisdiction, is the Louisiana appellate court's decision in *In re Gas Water Heater Prods. Liab. Litig.,* 697 So.2d 341 (La.Ct.App.1997), *rev'd,* 711 So.2d 264 (La.1998), which held that attorneys' fees awarded under Article 595 have no effect on the amount in controversy for state court jurisdiction purposes. Appellants fail to note that the *Gas Water Heater* court approved of and distinguished the prior decision in this case on the basis that it involved a suit under Louisiana's antitrust laws, which statutorily provide for attorneys' fees as an element of the plaintiffs' damages. *See id.* at 346 ("[B]ecause attorney's fees are included as a statutory element of a plaintiff's damages, consideration of attorneys' fees was proper to determine the jurisdictional amount for a jury trial."). *Gas Water Heater* reinforces rather than defeats the prior Fifth Circuit opinion in this case.

The issue of subject matter jurisdiction may not, for all of these reasons, be reconsidered in this appeal.

### B. Other State Law Claims

Appellants argue that the district court erroneously dismissed their claims alleging violations of Louisiana's general tort statute, La. Civ.Code Ann. art. 2315 (West 1997), and fraud statute, La. Civ.Code Ann. art. 1953 (West 1997). The appellants' arguments are unpersuasive.

■ The Frees rely on *Loew's, Inc. v. Don George, Inc.*, 237 La. 132, 110 So.2d 553 (La.1959), to support their contention that antitrust plaintiffs in Louisiana may also sue in tort under article 2315. Contrary to appellants' argument, however, *Loew's* does not stand for the proposition that alleged antitrust violators are also liable in tort. *Loew's* held that the statute of limitations for Louisiana antitrust actions was the same as for tort actions because antitrust actions resemble

---

1. Although the Third Circuit disagreed with the Ninth and D.C. Circuits, its decision is not inconsistent with our present decision because it limits re-examination of prior decisions to "extraordinary circumstances [that] warrant such reconsideration." · *Public Interest Research Group v. Mag-*

*nesium Elektron, Inc.*, 123 F.3d 111, 118 (3d Cir.1997). The "extraordinary circumstances" approved of by the *Magnesium Elektron* Court are the same exceptions to the law of the case doctrine recognized by this court in *Becerra*. *See id.* at 116–18.

tort actions more than breach of contract actions. *See id.* at 557–60. Because neither the Louisiana Supreme Court nor the Louisiana legislature has recognized a tort cause of action for violations of state antitrust laws, we likewise decline to recognize its existence.[2]

■■■ Appellants next contend that they have stated a valid cause of action for fraud under Article 1953. However, "[t]o recover under Article 1953, [the Frees] must demonstrate the existence of a contract." *Newport Ltd. v. Sears, Roebuck & Co.,* 6 F.3d 1058, 1067 (5th Cir.1993). Because the Frees were indirect purchasers of infant formula and had no contract with appellees, they have not stated a valid cause of action. Although the Frees correctly note that an action for fraud (negligent misrepresentation) can also be based in tort under article 2315, *see id.* at 1068, the Frees' claim likewise fails because they are required to show that Abbott Labs owed them a legal duty to disclose information. *See Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1131 n. 33 (5th Cir.1988), *vacated on other grounds sub nom., Fryar v. Abell,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989); *Wise v. Lapworth,* 614 So.2d 728, 731–32 (La.Ct.App.1993). Since Abbott Labs owed no legal duty to disclose their alleged price-fixing scheme, the Frees have failed to allege a valid cause of action.

### C. Motion to Certify Louisiana Antitrust Questions

The appellants have moved this court to certify the remaining two issues to the Louisiana Supreme Court. Specifically, they request certification concerning whether Louisiana antitrust law affords a cause of action to indirect purchasers of infant formula and whether Louisiana law prohibiting conspiracies "in restraint of trade or commerce in this state" applies to alleged interstate conspiracies.

■■■ "As a general proposition we are chary about certifying questions of law absent a compelling reason to do so; the availability of certification is such an important resource to this court that we will not risk its continued availability by going to that well too often." *Jefferson v. Lead Indus. Assoc. Inc.,* 106 F.3d 1245, 1247 (5th Cir.1997) (per curiam). Requests to certify questions to the highest court of a state are generally denied when the primary reason for certification is that state courts have not issued a definitive answer on the particular issue. *See Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.,* 958 F.2d 622, 623 (5th Cir. 1992). "Certification is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state." *Id.* Nevertheless, certification may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed. *Id.* The tests for certification are easily satisfied here.[3]

### 1. Indirect Purchaser Rule

■■■ Appellants argue that the district court erred in concluding that Louisiana antitrust law denies standing to consumers of infant formula who are indirect purchasers from the defendant manufacturers. Louisiana antitrust law permits "any person who is injured" by an antitrust violation to sue the offender for treble damages, costs, and attorneys' fees. *See* La. Rev. St. Ann. § 51:137 (West 1987).[4] Section 137 is nearly identical

**2.** Appellant's argument is even more incongruous with Art. 2315, considering that the Civil Code provision is expressly addressed to negligent conduct. Antitrust price-fixing is hardly negligent.

**3.** Since 1990, this court has certified only nine cases to the Louisiana Supreme Court. *See Hodgen v. Forest Oil Corp.,* 87 F.3d 1512 (1996); *Wallace v. Shreve Mem. Library,* 79 F.3d 427 (1996); *Naquin v. Prudential Assurance Co., Ltd.,* 65 F.3d 427 (1995); *First Nat'l Bank of Boston v. Beckwith Mach. Co.,* 26 F.3d 580 (1994); *Schirmer v. Edwards,* 2 F.3d 117 (1993); *Grubbs v. Gulf*

*Int'l Marine Inc.,* 985 F.2d 762 (1993); *Frey v. Amoco Prod. Co.,* 951 F.2d 67 (1992); *Louisiana v. Roemer,* 949 F.2d 145 (1991). In the most recent instance, we certified the pressing question "whether dairy cows owned by a dairy farmer are exempt as tools or instruments of the debtor's trade under Louisiana Revised Statute 13:3881(A)(2)." *Wilson v. Bryan,* 162 F.3d 378, (5th Cir. 1998).

**4.** Section 51:137 reads:

Any person who is injured in his business or property by any person by reason of any act or

to the federal enforcement provision, § 4 of the Clayton Act,[5] which the United States Supreme Court has interpreted to deny standing to indirect purchasers. *See Illinois Brick Co. v. Illinois,* 431 U.S. 720, 745–46, 97 S.Ct. 2061, 2074–75, 52 L.Ed.2d 707 (1977). Because Louisiana courts have never decided whether Louisiana's antitrust law is comparably limited, the district court decided the issue as if it were a Louisiana appellate court. *See Federal Deposit Ins. Corp. v. Abraham,* 137 F.3d 264, 268 (5th Cir.1998). The court concluded that Louisiana would follow the federal indirect purchaser rule because the language of the two provisions is nearly identical and Louisiana courts often look to federal antitrust jurisprudence for guidance in interpreting the state's antitrust laws.[6]

The Frees—and the Louisiana Attorney General as *amicus curiae*—urge that the Louisiana Supreme Court would decline to follow the federal indirect purchaser rule. The decisions of Louisiana courts have provided mixed signals on how to interpret state antitrust statutes when a corresponding federal rule exists. For example, in *Louisiana Power and Light Co. v. United Gas Pipe Line Co.,* 493 So.2d 1149, 1158 (La.1986), the Louisiana Supreme Court noted that, given the similarity between the federal and state antitrust provisions, the federal interpretation "should be a persuasive influence on the [state's] interpretation." *Id.; see also Reppond v. Denham Springs,* 572 So.2d 224, 229–30 (La.Ct.App.1990) (finding that the

"sound reasoning" of the federal antitrust rule justified its incorporation into state antitrust jurisprudence). In spite of this observation, however, the *Louisiana Power* court declined to follow the federal rule. *See* 493 So.2d at 1160. These cases provide little support either for adoption of the federal antitrust rule, as in *Reppond,* or for rejection of the federal model, as in *Louisiana Power.* Given the importance of the indirect purchaser issue and the lack of clear guidance from the courts of Louisiana, we certify the question to the Louisiana Supreme Court.

2. Interstate/Intrastate Conspiracy

Louisiana antitrust law prohibits every "conspiracy, in restraint of trade or commerce in this state.…" La. Rev. Stat. Ann. § 51:122 (West 1987). The parties disagree on the meaning of the term "in this state." The Frees contend that it creates a cause of action for alleged interstate conspiracies that have the effect of restraining trade in Louisiana. Abbott Labs, on the other hand, argues that the statute covers only those conspiracies that are wholly intrastate. Because neither the language of the statute nor Louisiana caselaw resolves this important antitrust issue, we certify it to the Louisiana Supreme Court.

Each party supports its respective argument by referring to the plain language of the statute and to the canons of statutory construction. The Frees cite the "last antecedent" canon,[7] arguing that the qualifying

---

thing forbidden by this Part may sue in any court of competent jurisdiction and shall recover threefold the damages sustained by him, the cost of suit, and a reasonable attorney's fee.

5. 15 U.S.C. § 15 (1997). Section 4 of the Clayton Act reads in part:

[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States … and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

6. Several state courts have interpreted their own antitrust laws, which also mirror § 4 of the Clayton Act, to deny standing to indirect purchasers. *See Blewett v. Abbott Labs., Inc.,* 86 Wash.App.

782, 938 P.2d 842, 845–46 (Wash.Ct.App.1997); *Stifflear v. Bristol–Myers Squibb Co.,* 931 P.2d 471, 475–76 (Colo.Ct.App.1996); *Mack v. Bristol–Myers Squibb Co.,* 673 So.2d 100, 108, (Fla. Dist.Ct.App.1996). *But see Hyde v. Abbott Labs., Inc.,* 123 N.C.App. 572, 473 S.E.2d 680, 686 (1996) (refusing to adopt the *Illinois Brick* rule, even though the state's antitrust statute is patterned after § 4 of the Clayton Act); *Blake v. Abbott Labs., Inc.,* 1996 WL 134947 (Tenn.Ct. App. March 27, 1996) (granting standing to indirect purchasers under the Tennessee Trade Practices Act).

7. Under the "last antecedent" canon of statutory construction, a qualifying phrase in a statute "usually is construed to apply to the provision or clause immediately preceding it." *In re RLV,* 484 So.2d 206, 209 (La.Ct.App.1986)(quoting Sutherland Stat. Const. § 47.33 (4th ed.1984)).

phrase "in this state" applies to the immediately preceding phrase "trade or commerce." Therefore, the statute should be read to prohibit any price-fixing conspiracy that restrains trade in Louisiana. Abbott Labs counters with a canon of its own: "the act as a whole ought to be interpreted so that no clause, sentence, or word shall be superfluous, or meaningless, if that result can be avoided." *Dore v. Tugwell,* 228 La. 807, 84 So.2d 199, 204 n. 6 (La.1955) (internal quotations omitted) (*quoting Hibernia Nat'l Bank v. Louisiana Tax Comm'n.,* 195 La. 43, 196 So. 15, 18 (1940)). Abbott Labs argues that because the statutory definition of "commerce" specifies that "commerce means trade or commerce *within this state,*" La. Rev.Stat. Ann. § 51:121 (West 1987) (emphasis added), the phrase "in this state" found in § 122 would be superfluous if it referred to the trade or commerce involved as the Frees contend. Thus, Abbot Labs argues that to give meaning to the definition of "commerce," the term "in this state" must apply only to the conduct prohibited by the statute and not the commerce involved.

In spite of these statutory arguments, the language of § 122 does not resolve the interstate/intrastate conspiracy issue. Neither do the decisions of the Louisiana courts. Each party cites *HMC Management Corp. v. New Orleans Basketball Club,* 375 So.2d 700 (La. Ct.App.1979), to justify its respective argument. In *HMC,* the plaintiffs sued the Jazz, a professional basketball team, alleging that the Jazz breached its agreement to lease a New Orleans sports venue in violation of Louisiana's antitrust statutes. The Jazz countered that they were engaged in interstate commerce, and therefore, federal antitrust laws preempted Louisiana's antitrust laws. The court agreed with the Jazz and, with respect to those claims that involved interstate commerce, held that Louisiana's antitrust law did not apply. *Id.* at 706–07.

The lease agreement, however, might be within the reach of Louisiana's antitrust laws because it was an "area of state interest," and the determination whether the Jazz violated the lease was a "state question." *Id.* at 707; *see also English v. National Collegiate Athletic Ass'n,* 439 So.2d 1218, 1223–24 (La. Ct.App.1983) (holding that because the NCAA football program engages in interstate commerce, § 122 does not apply). Abbott Labs cites *HMC* and *English* for the proposition that Louisiana antitrust law applies only to intrastate conduct.[8] Not surprisingly, the Frees disagree and argue that these cases do not apply to this case because they apply only to interstate sporting associations.

Finally, appellants refer to Judge Posner's reasoning in *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 612–613 (7th Cir.1997), where he concluded that Alabama's antitrust statue covered interstate conduct because to hold otherwise would render the statute a "dead letter" and because the modern trend among state courts is to interpret antitrust statutes to cover interstate commerce. *Id.* The Frees thus argue that limiting § 122 to cover only intrastate commerce would likewise kill the antitrust statute because virtually no commercial activity is purely intrastate. Notwithstanding the force of this logic, however, we conclude that the Louisiana Supreme Court is better suited to decide this important state antitrust issue and therefore certify the question to the Louisiana Supreme Court.[9]

## CERTIFICATION

Because these antitrust issues are matters of Louisiana law that will determine the outcome of this case and because there are no clear controlling precedents in the decisions of the Louisiana Supreme Court, we hereby

---

8. The appellees also rely on *Al Copeland Enters. v. Jamplis,* 1991 WL 49651 *5 (E.D.La.1991), to argue that "Louisiana antitrust laws do not apply to interstate commerce...." Although the federal district court made this legal finding, it does not guide us in resolving how the Louisiana Supreme Court would decide the issue.

9. Our conclusion that the Louisiana Supreme Court should resolve this issue is reinforced by the subsequent events surrounding the *Prescription Drugs* case. One year after the Seventh Circuit's decision, the Alabama Supreme Court rejected *Prescription Drugs* and held that its antitrust laws are limited to intrastate conduct. *See Abbott Labs. v. Durrett,* 1998 WL 436062, at *22 (Ala. July 31, 1998).

invoke the certification privilege granted by Louisiana Supreme Court Rule XII.[10]

We certify the following questions to the Louisiana Supreme Court:

1) Does the Louisiana antitrust enforcement provision, La. Rev. St. Ann. § 51:137 (West 1987), follow the federal rule as outlined in *Illinois Brick v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), and deny standing to indirect purchasers of products whose prices have been illegally fixed in an alleged conspiracy violative of the statute?

2) Does La. Rev. St. Ann. § 51:122 (West 1987), apply to an alleged interstate conspiracy to fix the wholesale price of infant formula that has the effect of restraining trade in Louisiana?

If the Louisiana Supreme Court accepts this certificate, the answers provided will determine the outcome of this appeal. We disclaim any intent that the Louisiana Supreme Court confine its reply to the precise form or scope of the legal questions certified. We retain cognizance of this case while pending before the Louisiana Supreme Court and transfer the record and appellate briefs with our certification to the Supreme Court of Louisiana.

Appellants' motion to certify the indirect purchaser question and the interstate conspiracy question to the Louisiana Supreme Court is GRANTED.

---

**10.** Louisiana Supreme Court Rule XII, section 1 reads:

When it appears to the Supreme Court of the United States, or to any circuit court of appeal of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Louisiana for rendition of a judgment or opinion concerning such questions or propositions of Louisiana law. This court may, in its discretion, decline to answer the questions certified to it.