UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 97-31341

ROBIN FREE AND RENEE FREE,

Plaintiffs-Appellants,

versus

ABBOTT LABORATORIES, BRISTOL-MYERS SQUIBB COMPANY,
AND MEAD JOHNSON & COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana

June 3, 1999

Before REYNALDO G. GARZA, JONES, and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The appellants, consumers of infant formula, sued the above-named manufacturers of infant formula under Louisiana's antitrust laws alleging a price-fixing conspiracy. Because this case is before us for a third time, it is unnecessary to recapitulate the procedural and factual history. See Free v. Abbott Lab., Inc., 164 F.3d 270 (5th Cir. 1999); Free v. Abbott Lab., 51 F.3d 524 (5th Cir.), reh'g denied, 65 F.3d 33 (1995).

This panel certified two state law questions to the Louisiana Supreme Court: 1) whether Louisiana antitrust law grants standing to indirect purchasers[1] of consumer products; and, 2)

---

[1]Indirect purchasers "are not the immediate buyers from the alleged antitrust violators," but are those who buy goods through

whether Louisiana antitrust law provides a cause of action for interstate conspiracies in restraint of trade, or whether such suits are limited to wholly intrastate conspiracies. See Abbott Lab., 164 F.3d at 277. The Louisiana Supreme Court denied certification, leaving us to fathom Louisiana's unsettled antitrust law as Louisiana courts would do it. See Federal Deposit Ins. Corp. v. Abraham, 137 F.3d 264, 268 (5th Cir. 1998). In our best judgment, the Louisiana courts would follow the federal indirect purchaser rule and deny standing to the appellants. See Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S. Ct. 2061 (1977). In reaching this conclusion, we assume arguendo that Louisiana antitrust laws apply to a conspiracy carried on interstate that has effects within the state. But see HMC Management Corp. v. New Orleans Basketball Club, 375 So. 2d 700, 706-07 (La. Ct. App. 1979).

**DISCUSSION**

Louisiana law permits any person "who is injured in his business or property by any person by reason of any act or thing forbidden by this Part, [to] sue . . . and . . . recover threefold the damages sustained by him, the cost of suit, and a reasonable attorney's fee." La. Rev. St. Ann. § 51:137 (West 1987). This section is virtually identical to the federal antitrust enforcement

---

an intermediary such as a retailer or wholesaler. Kansas v. Utilicorp United, Inc., 497 U.S. 199, 207, 110 S. Ct. 2807, 2812 (1990).

provision, § 4 of the Clayton Act.[2]  Although the Clayton Act is silent with respect to the standing afforded indirect purchasers, the United States Supreme Court long ago interpreted it to deny standing to indirect purchasers.  See Illinois Brick, 431 U.S. at 745-48, 97 S. Ct. at 2074-75.

No Louisiana case directly addresses the issue of standing.  The Louisiana Supreme Court afforded relevant insight to interpreting state antitrust statutes that are "virtually identical" to their federal counterpart when it noted that "the United States Supreme Court's interpretation . . . should be a persuasive influence on the interpretation of our own state enactment."  Louisiana Power and Light Co. v. United Gas Pipe Line Co., 493 So. 2d 1149, 1158 (La. 1986).  Lower Louisiana courts have likewise considered federal antitrust standards a starting point for interpreting counterpart state statutes.  See, e.g., Louisiana ex rel. Ieyoub v. Bordens, Inc., 684 So. 2d 1024, 1027 (La. Ct. App. 1996), writ denied, 690 So. 2d 42 (La. 1997); Reppond v. City of Denham Springs, 572 So. 2d 224, 228 (La. Ct. App. 1990).  The courts are not, however, required to abide by the federal standard

---

[2]Section 4 of the Clayton Act, 15 U.S.C. § 15 (1997), states in part:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

if compelling justifications exist for not doing so. See Louisiana Power, 493 So. 2d at 1158 (cautioning that "federal analysis is not controlling"); Reppond, 572 So. 2d at 228 n.2 (same).

In Louisiana Power, the Louisiana Supreme Court held that a parent company and its subsidiary are capable of conspiring in restraint of trade under the Louisiana antitrust law--contrary to the United States Supreme Court's interpretation and in spite of virtually identical state and federal statutes. See 493 So. 2d at 1158-60; cf. Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S. Ct. 2731 (1984). The court articulated a number of reasons for deviating from the Copperweld decision. First, as a 1931 state court decision had held intraenterprise conspiracies violative of Louisiana antitrust law, the state's precedent was firmly established. Second, before the United States Supreme Court modified its interpretation of the Sherman Antitrust Act in Copperweld, it, too, had proscribed intraenterprise conspiracies under the federal law.[3] Moreover, Copperweld does not expressly exclude federal antitrust liability where the conspirator is partially-owned, as in Louisiana Power, rather than a wholly-owned subsidiary. Third, a per se rule exempting parent/subsidiary conspiracies from Louisiana antitrust law would divest the courts of authority reposed in them by the legislature--a result particularly worrisome because intraenterprise activity can have

---

[3]See United States v. Yellow Cab Co., 332 U.S. 218, 67 S. Ct. 1560 (1947).

4

the same adverse economic effects as traditional conspiracies in restraint of trade.  Fourth, the Louisiana antitrust laws aspire to a political as well as strictly economic purpose: their political goal is to "provid[e] an environment conducive to the preservation of our democratic political and social institutions."[4]  Fifth, the Louisiana court was commanded by the "unqualified" statutory prohibition of "every" contract, combination or conspiracy in restraint of trade in Louisiana.  La. Rev. Stat. Ann. § 51:122; Louisiana Power, 493 So. 2d at 1160.

A careful comparison demonstrates that Louisiana Power is distinguishable from this case.  Consider first the superficially formidable issue of the "plain meaning" of the remedy statute.  Although the language of § 137, the statute here at issue, is also broad, whether it is "unqualified" like § 122 is the issue before us.  No Louisiana court has squarely so held,[5] and the Supreme Court decision in Illinois Brick rested not on the breadth of "any person," but on the extent of injury to "business or property" comprehended by the antitrust laws.  See 431 U.S. at 729, 97 S. Ct. at 2066.  Antitrust injury has always been a policy laden-concept

---

[4]Louisiana Power, 493 So. 2d at 1152 (quoting Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 4, 78 S. Ct. 514, 517 (1958)).

[5] In State ex rel. Ieyoub v. Borden, Inc., 1995 WL 59548 (E.D. La. Feb. 10, 1995), the federal district court noted, while discussing an issue of diversity jurisdiction, the absence of Louisiana caselaw interpreting whether § 137 provides a remedy for indirect purchasers.  The decision contains no holding on the issue before us.

designed, <u>inter</u> <u>alia</u>, to distinguish damages caused by anticompetitive conduct from those not so caused. <u>See, e.g.</u>, <u>Spectrum Sports, Inc. v. McQuillan</u>, 506 U.S. 447, 458-59, 113 S. Ct. 884, 891-92 (1993). Louisiana courts have not eschewed the importance of defining antitrust injury in this manner but, in fact, have deferred to federal precedent. <u>See</u>, <u>e.g.</u>, <u>J.B.N. Morris v. Rental Tools, Inc.</u>, 435 So. 2d 528, 534 n.1 (La. Ct. App. 1983). The nature of antitrust injury encompassed by § 137 thus best characterizes the question before us.

Viewed from this perspective, the purposes of § 137 and § 122 differ significantly and further distinguish <u>Louisiana Power</u>. Section 122 was interpreted as "unqualified" in order to proscribe conduct promoted by one enterprise that may be economically as harmful as classic conspiratorial conduct between unrelated entities. Section § 137, however, runs the risk of functional deconstruction if interpreted to provide an "unqualified" right of recovery. In addition, the courts' role in policing conduct violative of Louisiana antitrust policy would not be diminished by a rule restricting recovery to direct purchasers; on the contrary, the remedy would become more effective. The <u>Louisiana Power</u> decision, on the other hand, concluded that a narrower construction of § 122 would divest courts of authority under the antitrust laws. <u>See</u> 493 So. 2d at 1159. Finally, the political goal of the antitrust laws and the goal of furthering the economically efficient allocation of resources are both well served by

6

rationalizing the antitrust remedy as the Supreme Court did in Illinois Brick.

The Illinois Brick rule permitting only direct purchasers to sue for antitrust injury reduces the "dimensions of complexity" that would otherwise curtail the effectiveness of antitrust suits, see 431 U.S. at 737, 97 S. Ct. at 2070, and encourages "vigorous private enforcement" by enhancing direct purchasers' incentive to bring antitrust suits. See id. at 745-46, 97 S. Ct. at 2074-75. In contrast, the rule advocated by the Frees for antitrust recovery suits resembles chaos theory (a butterfly flapping its wings in the Amazon will affect global climate). See James Gleick, Chaos: Making a New Science (1987). The focus of suits would shift from the amount of increased prices caused by defendants' anticompetitive conduct (a relatively straightforward inquiry) to the allocation of damages among parties in the line of distribution to ultimate consumers. Litigation would be prolonged, would become far more complex factually and strategically, and would benefit lawyers and determined defendants while reducing recoveries for plaintiffs.[6]

---

[6]As appellees correctly describe the non-Illinois Brick position: "To recover damages, every member of the [Frees'] putative class would have to prove not only the magnitude of the alleged overcharge in wholesale prices at the time they bought infant formula, but the retail prices paid and the proportion of the alleged wholesale overcharge passed on to consumers through those retail prices." Appellees' brief at 32.

The Frees seem to object that adopting the <u>Illinois Brick</u> rule deprives them of a state law recovery that would supplement, not conflict with federal law.  <u>See</u> <u>California v. ARC America Corp.</u>, 490 U.S. 93, 109 S. Ct. 1661 (1989).  But this assertion misses the mark.  Neither the <u>California</u> case nor any cited Louisiana policy advocates increasing penalties on antitrust defendants or maximizing Louisiana plaintiffs' recovery as compared with federal law remedies.  Instead, the question is whether Louisiana seeks to enforce a coherent state antitrust law that places the incentive to sue on the party best situated to recover.  Because the <u>Illinois Brick</u> scheme is preferable for this purpose, we believe Louisiana courts would follow it.

Bolstering this conclusion is the fact that the majority of state appellate courts faced with this same issue have decided to follow the <u>Illinois Brick</u> road.[7]  For these reasons, the

_____

[7]<u>See</u> <u>Blewett v. Abbott Lab., Inc.</u>, 938 P.2d 842, 845-46 (Wash. Ct. App. 1997); <u>Mack v. Bristol-Myers Squibb Co.</u>, 673 So. 2d 100, 108, (Fla. Dist. Ct. App. 1996); <u>Stifflear v. Bristol-Myers Squibb Co.</u>, 931 P.2d 471, 475-76 (Colo. Ct. App. 1996).  <u>But see</u> <u>Hyde v. Abbott Lab., Inc.</u>, 473 S.E.2d 680, 685-86 (N.C. Ct. App. 1996) Several states have statutorily overruled <u>Illinois Brick</u>'s indirect purchaser rule, allowing any person to sue for antitrust violations whether injured "directly or indirectly." <u>See, e.g.</u>, Minn. Stat. § 325D.57 (1994) (recognized in <u>Minnesota ex rel. Humphrey v. Philip Morris, Inc.</u>, 551 N.W.2d 490 (Minn. 1996)); Cal. Bus. & Prof. Code § 16750(a) (West 1997) (recognized in <u>Cellular Plus, Inc. v. Superior Court</u>, 18 Cal. Rptr. 2d 308 (Cal. Ct. App. 1993)). Other states have taken the opposite approach and statutorily denied standing to indirect purchasers. <u>See, e.g.</u>, 740 Ill. Comp. Stat. Ann. 10/7(2) (West 1994) (recognized in <u>Gaebler v. New Mexico Potash Corp.</u>, 676 N.E.2d 228, 230 (Ill. App. Ct. 1997) (permitting only the state attorney general to bring indirect purchaser suits)).

appellants, as indirect purchasers of infant formula, lack standing to bring the present state antitrust claim.

Accordingly, we **AFFIRM** the district court's dismissal of appellants' claims.

**AFFIRMED.**