818 So.2d 256 (2002)
SOUTHERN TOOL & SUPPLY, INC.
v.
BEERMAN PRECISION INC., Industrial Welding Supply Co., Black & Decker Inc.
No. 2001-CA-1749.
Court of Appeal of Louisiana, Fourth Circuit.
May 1, 2002.
*257 Lynn H. Frank, Joseph R. Ward, Jr., Ward Nelson, LLC, New Orleans, LA, for Plaintiff/Appellant.
Harry Rosenberg, Christopher K. Ralston, Phelps Dunbar, L.L.P., New Orleans, LA, for Defendant/Appellee, Black & Decker (U.S.) Inc.
Don M. Richard, Metairie, LA, for Appellee, Industrial Welding & Supply Co.
Lawrence M. Lehmann, Barry J. Cooper, Jr., Lehmann Norman & Marcus LC, New Orleans, LA, for Defendant-Appellee, Beerman Precision, Inc.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge DAVID S. GORBATY).
DENNIS R. BAGNERIS, SR., Judge.
This is an appeal by plaintiff, Southern Tool & Supply, Inc. ("Plaintiff") from a July 17, 2001, opinion by the trial court that granted defendants' exception of lack of subject matter and dismissed Plaintiff's anti-trust claims against defendants-appellees, Beerman Precision, Inc. ("Beerman"), Industrial Welding Supply Co. ("Industrial Welding"), and Black & Decker, Inc. ("Black & Decker"). For the reasons stated more fully herein, we reverse and remand for further proceedings.

PROCEDURAL HISTORY
In October of 2000, Plaintiff brought the present suit for damages against Beerman, Industrial Welding, and Black & Decker. Plaintiff alleged violations of the Louisiana Anti-Trust statute, LSA-R.S. 51:121 et seq., and violations of the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1401. Plaintiff further asserted claims against defendants for other violations of state law, including breach of contract and detrimental reliance.
Black & Decker filed an exception of lack of jurisdiction over the subject matter on the basis that the Plaintiff's petition purports to apply Louisiana's antitrust laws, as opposed to federal antitrust law, to interstate commerce. In addition to the exception of lack of jurisdiction over the subject matter, Black & Decker filed an *258 exception of no cause of action, and exceptions of vagueness and improper cumulation in the district court. Defendants, Industrial Welding and Beerman, adopted the exceptions.
Following a hearing, the trial court maintained defendants' exception of lack of subject matter jurisdiction and dismissed Plaintiff's antitrust claims, but the court retained jurisdiction over Plaintiff's breach of contract claim.[1] In its Reasons for Judgment, the trial court stated, in part, the following:
Louisiana's antitrust laws are "virtually identical" to the federal antitrust statutes in all but one respect: the federal statutes apply to interstate commerce, while Louisiana's antitrust legislation applies to intrastate commerce. The question before this Court is whether the allegations asserted in the Plaintiff's petition affect [sic] strictly intrastate commerce.
Given the plain language of Louisiana's antitrust statute, Louisiana courts have dismissed actions purporting to apply Louisiana's antitrust laws to interstate commerce. Black & Decker is a Maryland corporation serving a national (and international) market. Black & Decker distributes nationally its products, including those to its Louisiana distributors, through the channels of interstate commerce. Black & Decker's codefendants are engaged in and service interstate markets. Even Southern Tool's allegations of conspiracy involve interstate phone calls, travel and meetings.
It seems evident to this Court that the antitrust claims at issue are not confined to intrastate commerce. Accordingly, this Court recognizes that there is a lack of subject matter jurisdiction as to the antitrust claims and that they must be dismissed. However, this Court does find jurisdiction to [be] proper for the Plaintiff's breach of contract claim.
Pursuant to LSA-R.S. 51:135, a special provision for review of antitrust actions, Plaintiff now appeals the dismissals of the antitrust claims.

FACTS
The following statement of facts is taken from Plaintiff's petition.
Plaintiff was engaged in the business of selling power tools, hand tools, saw blades, grinding wheels, drill bits, and other equipment to contractors in the construction industry who were located primarily in the Orleans-Jefferson area. When Plaintiff first started doing business in December of 1996, it applied to be a distributor of Black & Decker products, especially the DeWalt line of tools and products.[2] Black & Decker did not give Plaintiff a distributorship because of opposition from defendants Beerman and Industrial Welding.[3]
In the fall of 1999, Mr. George Elstrott, a salesman for Black & Decker and DeWalt, told Plaintiff "that his sales of products to distributors were down" and that "he would try to persuade his superiors to authorize a distributorship for Southern Tool to help sales of DeWalt and Black & Decker Products in the Metropolitan New Orleans area." Thereafter, Mr. Charlie *259 Kelly, Black & Decker's regional sales manager, agreed to let Plaintiff be a distributor. Black & Decker issued a distributor number to Plaintiff and allowed it to place an order for DeWalt and Black & Decker products at distributor prices. Mr. Elstrott told Plaintiff to keep a low profile with the new distributorship because Beerman and Industrial Welding would be upset.
Plaintiff placed its first order as a distributorship on November 1, 1999, whereby it ordered $11,572.00 worth of products as well as racks and supply stands to feature the DeWalt products. Plaintiff told approximately 130 customers that it would henceforth be a Black & Decker/DeWalt distributor and even persuaded one major electrical contractor to switch from another line of tools to Black & Decker.
When word got out that Plaintiff had become a distributor, Mr. Gary Hooter, vice president of sales for Industrial Welding, called Mr. Mark Beerman, president of Beerman, and together "they decided to `raise a stink' with Black & Decker about Southern Tool's distributorship." Specifically, Mr. Hooter and Mr. Beerman "agreed that they would call Black & Decker's home office to complain, that they would send back thousands of dollars worth of DeWalt merchandise in protest, and that they would threaten to end or downplay their promotion of Black & Decker and DeWalt products." Subsequently, Beerman and Industrial Welding shipped inventory back to Black & Decker. Beerman also canceled orders with Black & Decker.
Black & Decker caved in to pressure from Beerman and Industrial Welding. Specifically, on December 22, 1999, Mr. Elstrott (Black & Decker's sales representative) and Mr. Kelly (Black & Decker's regional sales manager) visited both Beerman and Industrial Welding and apologized for Plaintiff being a DeWalt distributor and told them that they would cancel Plaintiff's distributorship.
Thereafter, Mr. Elstrott and Mr. Kelly met with the principals of Plaintiff to inform them that Black & Decker was canceling the distributorship contract with Plaintiff due to a market survey that showed Black & Decker had enough distribution in the Orleans Parish-Jefferson Parish area without adding Plaintiff. The principals of Plaintiff requested the opportunity for Plaintiff to show Black & Decker what it could accomplish. Further, they informed Mr. Kelly and Mr. Elstrott that Plaintiff had already informed its customers about the new distributorship, and that Black & Decker's business reputation would be damaged by the sudden and unwarranted decision to cancel the distributorship.
The principals of Plaintiff later determined by making calls to other Black & Decker distributors, that no one had in fact been contacted by Black & Decker about a market survey. Further, the principals of Plaintiff learned from speaking with employees of Beerman, Industrial Welding, and Black & Decker, that Beerman and Industrial Welding had conspired and agreed to put pressure on Black & Decker to force them to cancel Plaintiff's newly acquired distributorship status.
On December 22, 1999, Jay Baker, a principal of Plaintiff, wrote to Black & Decker's officer John Scheich in Towson, Maryland, warning that the decision to cut off Plaintiff after agreeing to make it a distributor would damage Southern Tool. On January 5, 2000, Mr. Baker called Bud Schreiber, Mr. Kelly's supervisor, to see if Black & Decker would reconsider termination of the dealership contract; Mr. Shreiber told Mr. Baker that Black & Decker would not reinstate the contract.
*260 Plaintiff alleges that the cancellation of its distributorship damaged the business reputation of its company. Further, because Plaintiff had promoted the use of DeWalt products among its customers, Plaintiff was forced to buy DeWalt products from other distributors in order to supply the demand that it had created. Plaintiff alleges that "[b]uying through a middleman increased its costs by 10% to 20% per sale," and that it was not able to benefit from any special promotions.
Plaintiff alleges that the conduct of Black & Decker, Beerman, and Industrial Welding constitutes a violation of the Louisiana anti-trust laws because the three defendants agreed that Plaintiff would not be allowed to have a DeWalt dealership. Plaintiff alleges that defendants' agreement or oral contract not to deal with it was an unreasonable restraint of trade. Additionally, Plaintiff maintains that the defendants conspired to monopolize part of the trade in DeWalt products. Plaintiff alleges that, for the purpose of the antitrust action, the relevant geographic market is the Greater New Orleans area, including Orleans and Jefferson Parishes.
Further, Plaintiff alleges that the economic pressure brought jointly by Beerman and Industrial Welding to cause the cancellation of its distributorship constitutes a violation of the Louisiana Unfair Trade Practices Act. Plaintiff alleges that Black & Decker is also liable for acting in concert with Beerman and Industrial Welding to deprive it of its rights as a distributor of DeWalt products. Plaintiff alleges that, as a result of this conspiracy between Beerman, Industrial Welding, and Black & Decker, competition in sales and service of DeWalt products has been suppressed in the Greater New Orleans area.

DISCUSSION
On appeal, Plaintiff's sole assignment of error is that the trial court incorrectly found that, under the Louisiana anti-trust statute, the Louisiana courts lack subject matter jurisdiction over a conspiracy between a Maryland corporation and two Louisiana corporations to restrain trade in Louisiana. Plaintiff argues that even if one or more of the defendants is engaged in interstate commerce, and even if interstate phone calls were involved in the conspiracy, the state courts have subject matter jurisdiction because the anti-competitive effect occurred within the state of Louisiana. Conversely, the defendants contend that any antitrust claims that Plaintiff wishes to assert against defendants must be brought in federal court, because the petition alleges that defendant Black & Decker is engaged in interstate commerce, and that the conspiracy to restrain trade involved interstate phone calls, travel, and meetings.
Louisiana's antitrust statute, enacted in 1890, mirrors the Sherman Act, which was enacted that same year. Louisiana's antitrust statute provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal."[4] La. R.S. 51:122. The antitrust legislation further provides under La. R.S. 51:123 that "[n]o person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state." The federal antitrust statute provides that "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce among the several states." 15 U.S.C. § 1.
*261 The federal government's wide use of the commerce power is essential in its control over the expanded activities of interstate commerce and in protecting that commerce from burdens, interferences, and conspiracies to restrain and monopolize it. However, if the federal anti-trust legislation were construed to reach all enterprises and transactions, which could be said to have an indirect effect upon interstate commerce, then the state would lose virtually all of its power over its domestic concerns. The issue before this Court today is to determine to what extent the federal antitrust legislation limits this State's antitrust legislation when an alleged conspiracy involves both intrastate and interstate commerce.
Although neither the Louisiana Supreme Court nor this Court have explicitly held that Louisiana's antitrust statutes may apply to matters involving both intrastate and interstate commerce, they have upheld application of Louisiana's antitrust laws in cases where the anti-competitive effects occurred in Louisiana. See Jefferson v. Chevron U.S.A., Inc., 97-2436, 98-0254 (La.App. 4 Cir. 5/20/98), 713 So.2d 785 (where the defendant Chevron USA Inc. was a citizen of San Francisco, California and the oil and products moved in interstate commerce); Louisiana Power & Light Co. v. United Gas Pipe Line Co., 518 So.2d 1050 (La.App. 4 Cir. 6/01/87); 493 So.2d 1149 (La.9/08/86) (where the defendants were Pennzoil Company (a Delaware corporation) and United Gas Pipe Line Company (a Delaware partnership), and where the product at issue was natural gas both intrastate and interstate.) Accordingly, that the state antitrust statute applies to intrastate commerce does not necessarily mean that all acts in violation of the statute must occur in state.
Additionally, we find two federal cases, Free v. Abbott Laboratories Inc., 164 F.3d 270 (5th Cir.1999) and Terrebonne Homecare, Inc. v. SMA Health Plan Inc., 271 F.3d 186 (5th Cir.2001), although not binding on this Court, persuasive in determining whether or not state anti-trust law applies when the matter involves both intrastate and interstate commerce. In Free, plaintiffs filed a class action against infant formula manufacturers alleging a price-fixing conspiracy. Free, 164 F.3d at 272. The defendants removed the case to federal district court. Id. The plaintiffs attempted to persuade the federal court that Louisiana antitrust law, unlike its federal counterpart, granted standing to indirect purchasers. Id. The district court dismissed the state law antitrust claims. Id. The district court "concluded that Louisiana would follow the federal indirect purchaser rule because the language of the two provisions is nearly identical and Louisiana courts often look to federal antitrust jurisprudence for guidance in interpreting the state's antitrust laws." Id. at 275. On appeal, the Fifth Circuit certified two state law questions to the Louisiana Supreme Court: (1) whether Louisiana antitrust law grants standing to indirect purchasers of consumer products; and (2) whether Louisiana antitrust law provides a cause of action for interstate conspiracies in restraint of trade, or whether such suits are limited to wholly intrastate conspiracies. Id. at 277. The Louisiana Supreme Court denied certification. Free, 99-0189 (La.3/19/99), 739 So.2d 216. Consequently, the Fifth Circuit, in reaching its conclusion that the Louisiana courts would follow the federal indirect purchaser rule and deny standing to the appellants, found that Louisiana antitrust laws apply to a conspiracy carried on interstate that has effects within the state. Free v. Abbott Laboratories, Inc., 176 F.3d 298, 299 (5th Cir.1999).
In Terrebonne Homecare, the plaintiff sued defendant in state court alleging *262 violations of state antitrust law, the Louisiana unfair competition statute, the Louisiana Constitution and for breach of contract. 271 F.3d at 188. The defendant removed the case to federal court, relying on the artful pleading doctrine to asset that plaintiff's complaint stated a federal antitrust claim. Id. The district court denied plaintiff's motion to remand on the grounds that plaintiff's state antitrust claims were actually federal in nature because they involved interstate commerce, and Louisiana antitrust law applied only to intrastate commerce. Id. The district court, after it assumed jurisdiction, granted defendant's summary judgment motion and dismissed all of plaintiff's claims. On appeal, the Fifth Circuit held that the district court lacked subject matter jurisdiction over the matter. Id. at 189. The Fifth Circuit vacated the district court's orders and remanded the case to the district court with instructions to remand the action to the state court from which it was removed. Id. As stated by the Fifth Circuit:
Federal antitrust law does not completely preempt state antitrust laws. See California v. ARC America Corp., 490 U.S. 93, 101-02, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989) (declaring that Congress intended federal antitrust laws to supplement, not displace, state antitrust remedies); Watson v. Buck, 313 U.S. 387, 403, 61 S.Ct. 962, 967-68, 85 L.Ed. 1416 (1941); Puerto Rico v. Shell Co., 302 U.S. 253, 259-60, 58 S.Ct. 167, 170, 82 L.Ed. 235 (1937); Pounds Photographic Labs, Inc. v. Noritsu America Corp., 818 F.2d 1219, 1226 (5th Cir.1987) (holding that federal antitrust law do not completely preempt Texas antitrust statutes). Accordingly, the artful pleading doctrine does not apply here.
Terrebonne, 271 F.3d at 189. The Fifth Circuit further noted that the "plaintiff remained the master of its complaint and that, although it could have alleged a federal cause of action in its state petition, it did not do so." Id. citing Waste Control Specialists, LLC v. Envirocare of Texas, Inc., 199 F.3d 781(5th Cir.2000). Accordingly, the Fifth Circuit held that a Louisiana state court should determine whether plaintiff's Louisiana antitrust claim is defective. Id.
We are also guided by the United States Supreme Court decision of A.L.A. Schechter Poultry Corporation v. U.S., which discussed state and federal antitrust laws in relation to matters that involve both intrastate and interstate commerce. 295 U.S. 495, 547, 55 S.Ct. 837, 850, 79 L.Ed. 1570 (1935). In Schechter, the Supreme Court recognized a distinction between "direct and indirect effects" in the application of the federal anti-trust legislation. Specifically, the Court stated:
Where a combination or conspiracy is formed, with the intent to restrain interstate commerce or to monopolize any part of it, the violation of the statute is clear. But, where that intent is absent, and the objectives are limited to intrastate activities, the fact that there may be an indirect effect upon interstate commerce does not subject the parties to the federal statute, notwithstanding its broad provisions.... [T]he distinction between direct and indirect effects of intrastate transactions upon interstate commerce must be recognized as a fundamental one, essential to the maintenance of our constitutional system. Otherwise, as we have said, there would be virtually no limit to the federal power, and for all practical purposes we should have a completely centralized government.
Id. at 550, 55 S.Ct. 837. Thus, a state court is not precluded from exercising jurisdiction *263 to enforce its own antitrust law, unless there is a direct or substantial impact on interstate commerce law.
The defendants cite to two state court decisions, HMC Management Corp. v. New Orleans Basketball Club, 375 So.2d 700 (La.App. 4 Cir. 8/29/79), writ denied by 379 So.2d 11 (La.1980) (undue burden on National Basketball Association bars application of Louisiana Antitust law) and English v. National Collegiate Athletic Ass'n, 439 So.2d 1218 (La.App. 4 Cir. 10/11/83), writ denied by 441 So.2d 747 (La.1983) (undue burden on National Collegiate Athletic Association bars application of Louisiana Antitrust law), for the proposition that Louisiana antitrust law applies only to intrastate conduct. However, as Plaintiff correctly points out, the two cases cited by defendants concern state regulation of national organizations already subject to federal legislation or national governing bodies and thus, do not resolve the interstate/intrastate conspiracy issue at hand.
Our review of the case law leads this Court to believe that a state antitrust law is not invalid merely because it affects commerce. Rather, Louisiana's state antitrust law may be applied unless the burden on interstate commerce directly or substantially impedes the free flow of commerce, or the matter concerns state regulation of national organizations already subject to federal legislation or national governing bodies.
In this appeal, defendants rely on the following facts for the argument that the conspiracy alleged is an interstate conspiracy: (1) Black & Decker's principal place of business is in Towson, Maryland; (2) Black & Decker is a national manufacturer that distributes its products nationally through the channels of interstate commerce; (3) Black & Decker ships its products to distributors in Louisiana; (4) Black & Decker's co-defendants distribute Black & Decker's (and other manufacturers') products not only in Louisiana, but across the nation; and (5) that the alleged conspiracy involved interstate telephone calls, travel and meetings. Although the facts stated above may cause an indirect effect upon interstate commerce, we fail to find that they alone require the application of the federal antitrust statutes. The Plaintiff's petition alleges the effects of the anti-trust violations are purely local and within the borders of Louisiana. The defendants do not dispute that the effects of the alleged conspiracy occurred in Louisiana. Further, this Court believes it is worth reiterating that the Plaintiff is the master of its complaint and that, although it could have alleged a federal cause of action in its state petition, it did not do so. Thus, we fail to find that the allegations in the petition preclude the applicability of the Louisiana Antitrust Law.
Finally, although the defendants neither appealed nor answered the appeal concerning the trial court's failure to consider the exception of no cause of action, in brief they request that this court consider the exception in the event we reverse the judgment sustaining the exception of lack of jurisdiction over the subject matter. In the proceedings below, the exception of no cause of action was moot in light of the trial court's ruling granting the exception of lack of jurisdiction over the subject matter. Since we have reversed the trial court on the subject matter issue, the exception of no cause of action is no longer moot. However, because the trial court failed to rule on this exception, we decline to exercise our power of review. Accordingly, we remand to the trial court for its consideration the exception of no cause of action.
*264 For these reasons, the order of the trial court dismissing the petition for lack of subject matter jurisdiction is reversed, and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Neither at the hearing nor in its Reasons for Judgment did the trial court address Black & Decker's peremptory exception of no cause of action or dilatory exceptions of vagueness and improper cumulation of actions.
[2] Plaintiff alleged that Black & Decker is a foreign corporation whose principal place of business is Towson, Maryland.
[3] Plaintiff alleged that Beerman and Industrial Welding are Louisiana corporations authorized to do business in the State of Louisiana.
[4] La. R.S. 51:121 defines commerce as "trade or commerce within this state."