# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 25-136 C/W 25-124 & 25-132


**STATE OF LOUISIANA, BY AND THROUGH ITS ATTORNEY GENERAL, LIZ MURRILL**

**VERSUS**

**ABBVIE, INC., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 23-C-00114-C
HONORABLE CHARLES CRAVINS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**LEDRICKA J. THIERRY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sharon Darville Wilson, Charles G. Fitzgerald, and Ledricka J. Thierry, Judges.


**AFFIRMED; WRITS DENIED.**

**Nicole A. Eichberger**
**Margaret Frohn Swetman**
**Proskauer Rose LLP**
**650 Poydras Street, Suite 1800**
**New Orleans, LA 70130-6146**
**(504) 310-4088**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Lupin Pharmaceuticals, Inc.**

**David A. Mukittrick**
**Bradley R. Ruskin**
**Proskauer Rose LLP**
**Eleven Times Square**
**New York, NY 10036**
**(212) 969-3000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Lupin Pharmaceuticals, Inc.**

**Colin R. Kass**
**Proskauer Rose LLP**
**1001 Pennsylvania Avenue, N.W.**
**Suite 600 South**
**Washington, DC 20004**
**(202) 416-6800**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Lupin Pharmaceuticals, Inc.**

**Joseph L. Mcreynolds**
**Deutsch Kerrigan, L.L.P.**
**755 Magazine Street**
**New Orleans, LA 70130**
**(504) 377-7865**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Lupin Pharmaceuticals, Inc.**

**Charles M. Jarrell**
**Gina Bradley Tuttle**
**Guglielmo, Lopez, Tuttle, Hunter & Jarrell**
**306 E. North Street**
**Opelousas, LA 70571**
**(337) 948-8201**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Abbvie, Inc., Warner Chilcott, Ltd, Warner Chilcott Sales (US), LLC, Warner Chilcott, PLC, Watson Pharmaceuticals, Inc., Allergan, PLC, Actavis, Inc., and Actavis, PLC**

**Eugene E. Hutchinson**
**White & Case LLP**
**1221 Avenue of the Americas**
**New York, NY 10020**
**(212) 819-8520**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
> Abbvie, Inc., Warner Chilcott, Ltd, Warner Chilcott Sales (US), LLC, Warner Chilcott, PLC, Watson Pharmaceuticals, Inc., Allergan, PLC, Actavis, Inc., and Actavis, PLC

**C. Kelly Newman**
**White & Case LLP**
**75 State Street**
**Boston, MA 02109**
**(617) 979-9300**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
> Abbvie, Inc., Warner Chilcott, Ltd, Warner Chilcott Sales (US), LLC, Warner Chilcott, PLC, Watson Pharmaceuticals, Inc., Allergan, PLC, Actavis, Inc., and Actavis, PLC

**J. Mark Gidley**
**Kathryn J. Mims**
**White & Case LLP**
**701 13th Street NW**
**Washington, DC 20005**
**(202) 626-3600**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
> Abbvie, Inc., Warner Chilcott, Ltd, Warner Chilcott Sales (US), LLC, Warner Chilcott, PLC, Watson Pharmaceuticals, Inc., Allergan, PLC, Actavis, Inc., and Actavis, PLC

**Liz Murrill, Attorney General for the State of Louisiana**
**Mike Dupree, Public Protection Division**
**Mario Guadamud, Complex Litigation Unit**
**Matthew P. Stafford, Jr., Medicaid Fraud Control Unit**
**John J. Kelley, Office of the Attorney General**
**Ryan McNeil, Office of the Attorney General**
**1885 North 3rd Street**
**Baton Rouge, LA  70802**
**(225) 326-6468**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
> State of Louisiana

**John Alden Meade**
**Meade Young, LLC**
**400 Poydras Street, Suite 1680**
**New Orleans, LA 70130**
**(504) 382-6283**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **State of Louisiana**

**Robert L. Salim**
**Salim-Beasley LLC**
**1901 Texas Street, Suite 1680**
**Natchitoches, LA 71457**
**(337) 352-5999**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **State of Louisiana**

**Patrick C. Morrow**
**Richard T. Haik, Jr.**
**Morrow, Morrow, Ryan & Bassett**
**P.O. Drawer 1787**
**324 W. Landry Street**
**Opelousas, LA 71571**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **State of Louisiana**

**THIERRY, Judge.**

## FACTS AND PROCEDURAL HISTORY

This appeal involves an action brought on January 23, 2023, by the State of Louisiana, by and through its Attorney General (the State). Defendants to the action are multiple pharmaceutical companies, whom the State alleges engaged in a conspiracy to inflate prescription drug prices in Louisiana by agreeing to delay the introduction of the generic equivalent of the brand name birth control drug, Loestrin 24 Fe (Loestrin), into the Louisiana market.

Specifically, it was alleged by the State that there was an agreement between brand name drug manufacturers (the AbbVie Defendants[1]) and a generic drug manufacturer, Lupin Pharmaceuticals, Inc. (Lupin), to delay the entry of generic alternatives to Loestrin into the Louisiana market. The State alleges the AbbVie Defendants paid Lupin to delay the introduction of its generic equivalent to Loestrin so as to maintain the monopoly price of Loestrin. The State brought a claim under the Louisiana Monopolies Act (LMA), the Louisiana Unfair Trade Practices Act (LUTPA), Louisiana's Medicare Protection and Integrity Law (MAPIL) and, in the alternative, unjust enrichment, to recover for paying reimbursements to pharmacies (primarily under Medicaid) for branded Loestrin prescriptions rather than generics. The State alleged this agreement was tainted by fraud, sham lawsuits and sham regulatory filings.

Asserting the State's claims "necessarily turn on multiple substantial questions of federal law," the AbbVie Defendants sought removal of the case to

---

[1] The "AbbVie Defendants" are AbbVie, Inc.; Warner Chilcott, LTD; Warner Chilcott (US), LLC; Warner Chilcott Sales (US), LLC; Warner Chilcott Company, LLC; Warner Chilcott, PLC; Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Allergen, PLC; Actavis, Inc.; and Actavis, PLC. They are named this because AbbVie has acquired or merged at some point with all of these entities.

federal court. Eventually, after reviewing the AbbVie Defendant's Petition for Removal, the United States District Court, Western District of Louisiana remanded the case back to the Twenty-Seventh Judicial District Court on August 21, 2024.

On September 10, 2024, several exceptions were filed by Lupin and the AbbVie Defendants in district court, as follows:

1. Defendant Lupin filed a Dilatory Exception of Lack of Personal Jurisdiction;

2. The AbbVie Defendants filed a Peremptory Exception of No Cause of Action;

3. The AbbVie Defendants filed a Peremptory Exception of No Right of Action;

4. The AbbVie Defendants filed a Peremptory Exception of Prescription;

5. The AbbVie Defendants filed a Dilatory Exception of Vagueness;

6. The AbbVie Defendants filed a Peremptory Exception of Res Judicata;

7. Certain AbbVie Defendants (AbbVie, Inc.; Allergen, PLC; Actavis, Inc. and Actavis, PLC) filed a separate Peremptory Exception of No Cause of Action (on the grounds that the State's Petition contains no allegations of wrongdoing as to them);

8. Certain AbbVie Defendants (AbbVie, Inc.; Allergen, PLC; Actavis, Inc. and Actavis, PLC) filed a separate Dilatory Exception of Vagueness;

On November 10, 2024, Lupin, by virtue of a filing, adopted all of the arguments of the AbbVie Defendants as to their filed exceptions.

A hearing on the exceptions was held on December 9, 2024. After five hours of oral argument and receiving memoranda from all parties, the trial court took the matter under advisement. On January 9, 2025, the trial court issued written reasons for judgment either denying or mooting all the exceptions filed by Lupin and the AbbVie Defendants.

As to Lupin's Dilatory Exception of Lack of Personal Jurisdiction, the trial court found the State met its burden of showing Lupin had minimal contacts with Louisiana sufficient to establish personal jurisdiction. These contacts were (1) Lupin is registered to do business in Louisiana; (2) Lupin, at the time the conduct sued upon occurred, was engaged in the sale of generic drugs in Louisiana, including generic Loestrin; (3) the agreement to delay marketing generic Loestrin occurred in Louisiana; and (4) the agreement resulted in harm within the boundaries of Louisiana by requiring payment of excessively high prices for name brand Loestrin. Finding that Lupin purposely directed its activities toward Louisiana, and the litigation resulted from alleged injuries as a result of those activities, the trial court found specific jurisdiction in Louisiana as to Lupin. Thus, the exception was denied.

As to the AbbVie Defendants' Peremptory Exception of No Cause of Action, they argued the LMA prevented any cause of action against them, because they interpret the LMA as only applying to intrastate commerce. The trial court read the LMA as finding "[a]ny contract, combination or conspiracy that restrains Louisiana commerce is illegal. It is, likewise, illegal for any person to monopolize, attempt to monopolize, or combine or conspire with anyone else to monopolize Louisiana trade or Louisiana commerce." The court held it does not matter whether the conspiracy occurred inside or outside Louisiana, only that there was a conspiracy to restrain trade in Louisiana. Thus, it found the LMA applicable to the facts of this case and denied the Exception of No Cause of Action.

The AbbVie Defendants also filed a Peremptory Exception of No Cause of Action under the Medical Assistance Programs Integrity Law (MAPIL), La.R.S. 46:438.3, which provides that "[n]o person shall knowingly present or cause to be presented a false or fraudulent claim." The trial court found the State "sufficiently

3

allege[d] that claims were submitted that were 'part of a pattern [by Defendants] of incorrect submissions in regard to material information or which is otherwise part of pattern in violation of applicable federal or state law or rule.'" Accordingly, the trial court denied the Exception of No Cause of Action under MAPIL.

The AbbVie Defendants also filed a Peremptory Exception of No Cause of Action for claims by the State based upon a theory of unjust enrichment. The trial court noted that the State did allege facts that show there was no justification or cause for the enrichment by Defendants. Defendants in this exception argued that the State may not assert a claim based upon unjust enrichment because the State has asserted a claim under law. The trial court disagreed with Defendants' contention to dismiss the unjust enrichment claim because other laws are directed to the issue. The trial court reasoned:

> If a higher Court decides that the State has no cause of action under LMA, MAPIL, or Louisiana Unfair Trade Practices Act (LUTPA), that will necessarily mean that LMA, MAPIL and LUTPA are not other laws directed to the issue of whether a pharmaceutical company can conspire to create and execute a generic drug delay scheme involving fraud that causes monetary loss to the State of Louisiana. At that point, the State's causes of action under LMA, MAPIL and LUTPA would be non-existent. In that event, the State's alternative claim of unjust enrichment would serve to fill a gap in the law.
> . . .
>
> If higher courts ultimately determine that the exception of no cause of action under LMA, MAPIL and LUTPA were properly denied here, the claim for Unjust Enrichment can be disposed of at a later date by amendment of the Petition to exclude that claim, or by summary judgment. On the other hand, if a higher court were to decide that there is no cause of action under LMA, MAPIL or LUTPA, it would be judicially inefficient to dismiss the unjust enrichment claims now, only to have the State file a new suit to pursue the unjust enrichment claim after the higher courts have examined these issues.
>
> For these reasons, the Exception of No Cause of Action on the alternative claim of unjust enrichment is DENIED.

Next, the trial court addressed the filing of a separate Peremptory Exception of No Cause of Action by certain AbbVie Defendants (AbbVie, Inc.; Allergen, PLC; Actavis, Inc.; and Actavis, PLC) on the grounds that the State's Petition contained no allegations of wrongdoing as to them. Specifically, those Defendants alleged the State employed "group pleading" that did not allege wrongdoing on their part. The trial court found the Petition alleged facts that applied to all defendants. Moreover, the trial court found the Petition alleges agreements, acquisitions and mergers among the defendants that may be sufficient to support a cause of action under a theory of successor liability or contract law (the facts established there were numerous acquisitions and mergers that took place involving these defendants). Noting that Louisiana is a fact pleading state, and because no evidence is allowed in an exception of no cause of action, considering the well-pled allegations in the Petition, the trial court found it would not be proper at this stage to dismiss the suit against these defendants.

The AbbVie Defendants also filed a Peremptory Exception of No Right of Action on several grounds. First, they maintained the State has no right of action under the LMA, LUTPA and unjust enrichment because the State was an indirect purchaser. They cited the United States Supreme Court case of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061 (1977), for the proposition that only a direct purchaser may bring an action under the federal antitrust provision. The trial court found the decision in *Illinois Brick* was solely based on federal policy considerations, and as such was "not applicable to the Louisiana laws that are at issue in this case." The trial court also found "neither LMA, LUTPA nor Louisiana's unjust enrichment construct prohibit the State from bringing an action as an indirect

5

purchaser." Thus, the trial court denied the Exception of No Right of Action on the basis that the State was an indirect purchaser.

Second, the AbbVie Defendants alleged the State has no right of action because the Louisiana Department of Health (LDH) and other state agencies are the proper parties to bring suit under the LMA, MAPIL, LUTPA and unjust enrichment. The trial court disagreed, finding the State's right to bring LMA, MAPIL and LUTPA actions has repeatedly been recognized in the jurisprudence. The trial court also found the State was the proper party to bring any action for unjust enrichment if proven to have occurred. Thus, the Exception of No Right of Action on these grounds was denied.

The AbbVie defendants also filed an Exception of Prescription based upon the argument that independent state agencies are the proper parties to bring suit and the prescriptive period as to these agencies has prescribed. The trial court denied the exception, finding the State, not the independent agencies, was the proper party to bring suit, and under La.Const. art. XII, § 13, "Prescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law."

The AbbVie Defendants also filed an Exception of Res Judicata asserting any direct purchaser claims were resolved by Multidistrict Litigation in federal court in Rhode Island, where direct purchaser claims were resolved, and the State did not opt out of that litigation. The State maintained the Eleventh Amendment of the United States Constitution, which grants sovereignty to the states, nullifies the exception of res judicata in this case. The trial court noted that the parties filed a Stipulation into the record stating that the State has not identified any direct purchases and is not

6

pursuing any direct purchaser claims. For that reason, the trial court found the Exception of Res Judicata was moot.

Lastly, the AbbVie Defendants filed an Exception of Vagueness on two grounds. The first alleged the claims against certain AbbVie Defendants (Allergen, PLC, Actavis, Inc. and Actavis, PLC) was impermissibly vague. The trial court denied this exception, noting discovery has not been completed in this matter. Second, the AbbVie Defendants maintained the State failed to identify the state agencies on whose behalf the State brings this suit. The trial court found that the "failure to identify which agencies would be barred from bringing suit based upon the same transaction or occurrence so as to be barred by res judicata does not pose a grave risk, as those actions would be barred by prescription." Thus, the trial court denied the exception of vagueness on these grounds as well.

The trial court's written reasons for judgment were issued on January 9, 2025, denying all exceptions filed by Lupin and the AbbVie Defendants. A certified copy of the reasons for judgment was issued by the Clerk of Court on January 13, 2025. Lupin timely filed a Motion for Appeal with respect to the denial of its exceptions regarding the LMA on January 16, 2025. On January 24, 2025, the trial court signed its judgment overruling all exceptions. On January 27, 2025, the AbbVie Defendants timely filed their Motion for Appeal. The trial court's January 24, 2025 judgment is an immediately appealable interlocutory judgment pursuant to La.R.S. 51:134 and 51:135.[2] On January 28, 2025, the trial court signed the Order of Appeal involving Lupin.

---

[2] Under the provisions of La.R.S. 51:135, interlocutory judgments, such as the one before us, are immediately reviewable because they allege claims that Defendants violated the LMA. Louisiana Revised Statutes 51:135 states:

On February 24, 2025, Lupin timely filed a writ application (docket number CW 25-132) with this court seeking supervisory review of the court's interlocutory ruling denying Lupin's declinatory exceptions with respect to LUTPA, MAPIL and common law claims. On that same day, the AbbVie Defendants also timely filed a writ application with his court.

On March 6, 2025, Lupin and the AbbVie Defendants filed a Joint Motion to Consolidate the appeal (docket no. 25-136) and the writ applications (docket nos. 25-124 and 25-132). The State consented to the consolidation and this court granted the Joint Motion to Consolidate. As such, the issues raised in the writ application will also be addressed in this opinion. In its writ application and appeal, Lupin joins in and adopts all the arguments made by the AbbVie Defendants.

***Assignments of Error.***

Lupin alone asserts the following assignment of error from the trial court's judgment:

1. The trial court erred in finding specific personal jurisdiction over Lupin.

The AbbVie Defendants assert the following assignments of error from the trial court's judgment, which Lupin adopts in total:

1. The trial court erred in failing to dismiss the State's LMA claims for failure to state a cause of action where the State failed to allege that any anticompetitive conduct occurred within Louisiana.

---

All interlocutory judgments in the cases affected by this Part, and not otherwise provided for, shall be appealable within five days and shall be heard and determined within twenty days after appeal is lodged, and any interlocutory judgments not appealed, except those rendered during the progress of the trial, shall be final, and shall not be reopened on final appeal. Such appeals shall be on the original papers, on the order of the district judge, if a transcript cannot be prepared in time.

2. The trial court erred in failing to dismiss the State's LMA claims for no right of action because Louisiana state law does not permit indirect purchasers to bring suit, as stated in *Free.*

3. The trial court erred in failing to dismiss the State's LMA claims for no right of action to pursue a claim under the LMA on behalf of LDH and any other unnamed independent state agency because the State lacks a right of action to bring such claims under the Louisiana Supreme Court's holding in *Molina. Molina* establishes that only the independent agency may bring a suit, not the State on its behalf, where the statute at issue does not give the State authority to bring claims on behalf of the agency and no exceptional circumstances are pleaded.

4. The trial court erred in failing to dismiss the State's LMA claims based on prescription which properly belongs to LDH or other independent agencies because such agencies cannot rely on *nullum tempus.*

5. The trial court erred in failing to dismiss all claims on behalf of unnamed state agencies as vague because the AbbVie Defendants cannot determine the claims brought against them and for what reasons.

6. The trial court erred in failing to dismiss the LMA claims brought against AbbVie, Inc., Allergan, PLC, Actavis, Inc. and Actavis, PLC for failure to state a cause of action because the Petition contains no allegations relating to these entities or allegations sufficient to state a prima facie case of successor liability.

7. The trial court erred in failing to find that the State's allegations as to the LMA claims against Allergan, PLC, Actavis, Inc., Actavis, PLC, and AbbVie, Inc. were impermissibly vague.

## ANALYSIS

### I. *Lupin's Assignment of Error.*

In its writ application and appeal, Lupin maintains the trial court erred in denying its Exception of Lack of Personal Jurisdiction. The AbbVie Defendants did not contest that there was personal jurisdiction as to them; thus, Lupin alone asserts this assignment of error.

The Louisiana Long Arm Statute provides for the exercise of personal jurisdiction over a nonresident defendant, who acts directly or by an agent, as to a cause of action arising from transacting any business in this state, contracting to supply services or things in this state, or causing injury or damage by an offense or quasi offense committed through an act or omission in this state. La.R.S. 13:3201. Further, the Louisiana Long Arm Statute provides for the exercise of personal jurisdiction over a nonresident on any basis consistent with the United States and Louisiana Constitutions. La.RS. 13:3201(B); *see also Crosstex Energy Servs., LP v. Texas Brine Co., LLC*, 17-1405 (La.App. 1 Cir. 4/25/18), 253 So.3d 806, *writ denied*, 18-881 (La. 9/28/18), 252 So.3d 919. "The addition of Subsection B to the Long Arm Statute ensures that the long-arm process extends to the limits allowed by due process." *Id*. at 811. Thus, "the sole inquiry into jurisdiction over a nonresident is an analysis of the constitutional due process requirements." *Id*.

"Due process allows personal jurisdiction over a nonresident defendant when it has certain 'minimum contacts' with the forum state such that maintenance of the suit does not offend traditional notions of 'fair play and substantial justice.'" *Id*. at 811 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945) and *Southeast Wireless Network, Inc. v. U.S. Telemetry Corp.*, 06-1736 (La. 4/11/07), 954 So.2d 120, 124–25). "The defendant's contact with the forum state must be such that he should reasonably anticipate being haled into court in the forum state." *Id.*

Louisiana Code of Civil Procedure article 930 provides that at a trial on a declinatory exception, evidence may be introduced to support or controvert any of the objections pleaded. Lupin entered no evidence in support of its exception of lack of personal jurisdiction. "When no evidence is presented at the hearing on a

10

jurisdictional objection, the objection must be decided on the facts alleged in the petition. *Park West Children's Fund, Inc. v. Trinity Broadcasting Network, Inc.*, 2013-444 (La. App. 3d Cir. 10/16/13), 156 So.3d 682, 686; See also *Northshore Regional Medical Center, L.L.C.*, 94 So.3d at 160-161." *Witter v. Sanibel Yacht & Slip, LLC*, 19-1031, p. 8 (La.App. 1 Cir. 6/24/20), 307 So.3d 1053, 1059. Thus, the trial court properly examined the allegations set forth in the State's Petition. The trial court concluded as follows:

> [T]he facts alleged in the Petition are sufficient to show that Lupin has contacts in the State of Louisiana that are so related to the controversy that is the subject of this suit so not to offend due process. The controversy in this case is whether Lupin and others engaged in a conspiracy to artificially inflate drug prices in Louisiana, by delaying the entry of generic Loestrin products into the Louisiana market. The activity of which the State complains was directed toward Louisiana, significant injury occurred in and to Louisiana, and, if the alleged activities are true, then the activities' relationship to the forum state far surpass what is needed to establish specific jurisdiction.

We find unpersuasive Lupin's assertion that it has a "complete absence of any Louisiana contacts." The trial court noted Lupin was registered to do business in Louisiana. Although, as Lupin points out, simply being registered to do business in Louisiana is not enough by itself to confer specific jurisdiction on Lupin, the State's Petition alleges other significant contacts between Lupin and Louisiana. The State notes Lupin has an ongoing contractual relationship with Louisiana through its Medicaid program, which is the exact program for which the State is seeking relief from Lupin. The State also points out that Lupin's entry into Louisiana with the generic Loestrin was delayed and not a permanent absence; and at all times they were always present in Louisiana, but simply agreed with the AbbVie Defendants to delay the introduction of the generic Loestrin. This period of delay allowed the AbbVie Defendants to be able to charge significantly higher prices for branded

11

Loestrin, rather than offer the lower cost generic equivalent, and defeat Louisiana's generic subscription laws. The State also alleged in its Petition that when Lupin finally did enter Louisiana, it did so at a price level in excess of what its price would have otherwise been, stating "Plaintiff would have paid less for Loestrin 24 drugs by: . . . (c) purchasing generic loestrin 24 at lower prices sooner."

Lupin also argues its non-entry into Louisiana was precipitated by a 2010 settlement of federal patent litigation with AbbVie, where a settlement was reached to provide that Lupin would not sell generic Loestrin until the patent expired. Lupin argues, because this settlement occurred in Delaware, the conduct the State challenges (the agreement to delay entry of generic Loestrin into the market) occurred not in Louisiana, but Delaware. However, the State notes its Petition does not allege the agreement to extend AbbVie's monopoly was confected in Delaware. What the Petition alleges is that the agreement was designed to unlawfully extend AbbVie's monopoly in all fifty states, including Louisiana. The Petition points to the LMA, which specifically states that "every contract, combination, in the form of a trust or otherwise or conspiracy, in restraint of trade or commerce in this state is illegal." La.R.S. 51:122. We agree with the State that the key point in conferring jurisdiction in not where the contract, combination, or conspiracy was confected, but whether the trade or commerce so restrained must be "in this state." Significantly, the State's Petition alleges that Lupin received funds from the AbbVie Defendants, derived specifically from the unlawful profits gained from the agreement to delay the introduction of the generic equivalent of Loestrin.

We cannot say the trial court erred in finding Lupin intentionally directed its conduct towards Louisiana, specifically to affect a competitive market in Louisiana, and was allegedly directly compensated for this conduct out of the funds derived by

12

the AbbVie Defendants through this conduct. Therefore, the trial court's denial of Lupin's Exception of Lack of Personal Jurisdiction is affirmed.

## II. The AbbVie Defendants' Assignments of Error (Adopted by Lupin)

### 1. The trial court erred in failing to dismiss the State's LMA claims for failure to state a cause of action.

"An exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition and is triable on the face of the petition." *Badeaux v. Southwest Computer Bureau, Inc.*, 05-612, 05-719, p. 7 (La. 3/17/06), 929 So.2d 1211, 1217. To determine the issues raised by the exception of no cause of action, "each well-pleaded fact in the petition must be accepted as true." *Id.* "An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief." *Id.* "Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial." *Id.* "If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled." *Id.*

The AbbVie Defendants assert that there is no cause of action against them under the LMA, La.R.S. 51:121 *et seq.* "Commerce means trade or commerce within the geographic boundaries of this state." La.R.S. 51:121. "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal." La.R.S. 51:122(A). "No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state." La.R.S. 51:123

13

A plain reading of the above statutes provides commerce is "trade or commerce within the geographical boundaries of this state." La.R.S. 51:121. The illegal act which the State alleges is the "contract, combination . . . or *conspiracy*" and the alleged injury is the "restraint of trade or commerce." Thus, we agree with the State and the trial court that the sale of drugs in this state at monopoly prices is under the umbrella of "commerce" as defined in the LMA. Further, nowhere in La.R.S. 51:122(A), or anywhere else in the LMA, is there a stated requirement that the "contract, combination . . . or conspiracy" must have occurred within Louisiana. However, there most certainly is a geographical requirement that the restrained trade or commerce must have occurred in Louisiana. Nowhere in the State's Petition does it assert that the conspiracy in question occurred in Louisiana, but the Petition does clearly allege that the injury occurred within the geographical boundaries of Louisiana.

Defendants rely on *State By & Through Caldwell v. Fournier Industrie et Sante*, 17-1552 (La. App. 1 Cir. 8/3/18), 256 So.3d 295, *writ denied*, 18-2065 (La. 4/8/19), 267 So.3d 607, for its interpretation that the LMA is confined to strictly intrastate conduct. Similar to the instant case, in *Fournier* the State's Petition alleged that Defendants had employed an unlawful scheme to prevent or delay a less expensive generic version of a drug from entering the market. The State claimed that, through this scheme, Defendants illegally maintained monopoly power in the United States for at least a decade, maintained the price at supra-competitive levels, and overcharged the State of Louisiana millions of dollars by depriving it of the benefits of unrestricted competition and access to less expensive generic versions of the drug in question. Similar to here, the defendant drug manufacturer filed an exception of no cause of action as to the LMA claim, contending the alleged acts did

14

not occur in Louisiana or have the purpose of affecting trade in Louisiana. In reversing the trial court's denial of the exception of no cause of action, the appellate court in *Fournier*, 256 So.3d at 303, stated:

> The State cannot state a cause of action for violations of the Louisiana Monopolies Act based on the operative facts (*i.e.* AbbVie's activities) that occurred outside of the geographic boundaries of Louisiana. The Louisiana Monopolies Act defines commerce as "trade or commerce within the geographic boundaries of <u>this state</u>." La.R.S. 51:121 (emphasis added). Further, the Louisiana Monopolies Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in <u>this state</u> is illegal." La.R.S. 51:122(A) (emphasis added). The alleged illegal acts in the State's petition include patent infringement actions filed in Illinois and Delaware. Although the State alleges that AbbVie's acts affected commerce within Louisiana and that AbbVie sold TriCor within Louisiana, the alleged wrongful acts occurred outside of the geographic boundaries of Louisiana. Accordingly, the State failed to state a cause of action under the Louisiana Monopolies Act.

Initially, we note the first circuit's decision in *Fournier* is not controlling authority here. Moreover, as the trial court found, we choose not to follow the decision in *Fournier*, finding it disregards the plain language of the LMA. As noted above, any geographic restriction in the LMA refers to the injury in this case. i.e., the "restraint of trade or commerce." There is no geographic restriction as to where the cause, in this case the conspiracy between Lupin and AbbVie, occurs.

The State notes the fourth circuit in *Southern Tool & Supply, Inc. v. Beerman Precision Inc.*, 04-1749, pp. 2-3 (La.App. 4 Cir. 2/14/05), 899 So.2d 53, 55, *writs denied*, 05-720 and 05-721 (La. 6/3/05), 903 So.2d 457, provided a different interpretation of whether the LMA applies strictly to intrastate conduct, stating:

> This Court noted that although neither the Louisiana Supreme Court nor this Court have explicitly held that Louisiana's antitrust statutes may apply to matters involving both intrastate and interstate commerce, both courts have upheld application of Louisiana's antitrust laws in cases where the anticompetitive effects occurred in Louisiana. *Southern Tool & Supply, Inc. v. Beerman Precision Inc.*, 2001-1749 (La.App. 4 Cir. 5/1/02), 818 So.2d 256. In finding that the trial court

erred in granting defendants' exceptions of lack of subject matter jurisdiction, this Court held that the Louisiana antitrust statute's application to matters of intrastate commerce does not necessarily mean that all acts in violation of the statute must occur within this state. *Id.*

We find the fourth circuit's interpretation in *Southern Tool & Supply*, which prioritizes the effect of the restraint of commerce occurring in Louisiana rather than the location of the conspiracy which led to the anticompetitive conduct is correct. This focuses on the restraint of commerce within Louisiana rather than the domicile of the alleged wrongdoers.

Thus, we find the trial court was correct in denying Defendants' argument that, in order for the LMA to apply, the conspiracy must have occurred in Louisiana. A plain reading of the statutes in question convinces us that under the LMA it is illegal to conspire to restrain trade in Louisiana, regardless of where the conspiracy was confected. Thus, the LMA is applicable to the facts alleged in the State's Petition. The Exception of No Cause of Action was properly denied.

2. *The trial court erred in failing to dismiss the State's LMA claims for no right of action because Louisiana state law does not permit indirect purchasers to bring suit, as stated in Free.*

The function of an exception of no right of action is a determination of whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. La.Code Civ.P. art. 927(A)(6); *Badeaux*, 929 So.2d 1211. "In examining an exception of no right of action, a court should focus on whether the particular plaintiff has a right to bring the suit but assume that the petition states a valid cause of action for some person." *Turner v. Busby*, 03-3444, p. 4 (La. 9/9/04), 883 So.2d 412, 415.

The AbbVie Defendants argue the trial court erred in holding that Louisiana law permits indirect purchasers to recover for injuries under the LMA. Indirect

16

purchasers are those who do not purchase products directly from manufacturers but instead purchase the products indirectly from retailers or wholesalers. The State stipulated that it is only an indirect purchaser. The AbbVie Defendants base this argument on *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061 (1977), where the United States Supreme Court held that only a direct purchaser may bring an action under the federal antitrust provision. The State does not dispute that *Illinois Brick* bars indirect purchasers from seeking monetary damages under *federal* antitrust laws. However, the State maintains *Illinois Brick* "neither pre-empts nor applies to state antitrust laws." In support of this argument, the State cites the Unites States Supreme Court's opinion in *California v. ARC America Corp.*, 490 U.S. 93, 102-03, 109 S.Ct. 1661, 1666 (1989), which discussed the effect of its ruling in *Illinois Brick* and rejected the argument that California's antitrust law, which allows indirect purchaser actions, was preempted by federal law:

> Neither of those cases (*Illinois Brick* and *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968)) addressed the preemptive force of the federal antitrust laws. Neither case contains any discussion of state law or of the relevant standards for preemption of state law. As we made clear in *Illinois Brick,* the issue before the Court in both that case and in *Hanover Shoe* was strictly a question of statutory interpretation—what was the proper construction of § 4 of the Clayton Act. *See, e.g.,* 431 U.S. at 736, 97 S.Ct. at 2069.

> It is one thing to consider the congressional policies identified in *Illinois Brick* and *Hanover Shoe* in defining what sort of recovery federal antitrust law authorizes; it is something altogether different, and in our view inappropriate, to consider them as defining what federal law allows States to do under their own antitrust law. As construed in *Illinois Brick,* § 4 of the Clayton Act authorizes only direct purchasers to recover monopoly overcharges under federal law. We construed § 4 as not authorizing indirect purchasers to recover under federal law because that would be contrary to the purposes of Congress. But nothing in *Illinois Brick* suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws.

The Supreme Court further found that "[g]iven the long history of state common-law and statutory remedies against monopolies and unfair business practices, it is plain that this is an area traditionally regulated by the States." *Id*. at 101, 120 S.Ct. 1665 (footnote omitted). The Supreme Court ultimately concluded that Congress had not preempted the field of antitrust law but instead "intended the federal antitrust laws to supplement, not displace, state antitrust remedies." *Id*. at 102, 109 S.Ct. 1665.

The AbbVie Defendants rely on the federal court opinion in *Free v. Abbott Laboratories, Inc.*, 176 F.3d 298 (5th Cir. 1999). In *Free*, consumers of infant formula sued the manufacturers of infant formula under Louisiana's antitrust laws alleging a price-fixing conspiracy. The federal court noted that the "Louisiana Supreme Court denied certification, leaving us to fathom Louisiana's unsettled antitrust law as Louisiana courts would do it." *Id*., at 299. The *Free* court then went on to opine:

> In our best judgment, the Louisiana courts would follow the federal indirect purchaser rule and deny standing to the appellants. See *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061 (1977). In reaching this conclusion, we assume <u>arguendo</u> that Louisiana antitrust laws apply to a conspiracy carried on interstate that has effects within the state.

*Id*.[3]

The first circuit in *State, By and Through Caldwell v. Astra Zeneca AB*, 16-1073 (La. App. 1 Cir. 4/11/18), 249 So.3d 38, 42, *writ denied*, 18-758 (La. 9/21/18), 252 So.3d 904, and *writ denied*, 18-766 (La. 9/21/18), 252 So.3d 899, in noting that

---

[3] We note, as further support for our above conclusion that under the LMA it is illegal to conspire to restrain trade in Louisiana, regardless of where the conspiracy is confected, is the above quote from the *Free* court where it assumed for argument purposes that "Louisiana antitrust laws apply to a conspiracy carried on interstate that has effects within the state."

18

the federal court in *Free* "believes that Louisiana courts would follow the *Illinois Brick* rationale such that indirect purchasers do not have standing under Louisiana state law," then examined in footnote 6 the nationwide trends on whether to allow indirect purchasers to have standing to sue under state antitrust laws:

> Twenty-six states and the District of Columbia have judicially or legislatively "repealed" *Illinois Brick* and provided standing (or a right of action) to indirect purchasers under antitrust or consumer protection statutes. To guard against the concern first raised in *Illinois Brick*, many of these states require courts to ensure the defendants are not subject to multiple liability. Six other states have passed partial *Illinois Brick* repealer statutes. While these states do not permit indirect purchaser suits, they authorize the state attorney general to recover if the state itself is injured as an indirect purchaser or to recover on behalf of an indirect purchaser as *parens patriae*. In contrast, thirteen states follow *Illinois Brick* by either completely barring indirect purchaser suits or by providing standing under limited circumstances. Many do so because their antitrust laws are interpreted to be harmonious with federal antitrust law. Five states have not addressed the issue.

We further note *Free* did not provide any factual analysis of the asserted claims and is in opposition to the Supreme Court's opinion in *ARC America* that "nothing in *Illinois Brick* suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws." *ARC America Corp.*, 490 U.S. at 103, 109 S.Ct. at 1666. Thus, we find *Free* provides little support for the AbbVie Defendant's proposition that indirect purchasers do not have a right of action under the LMA.

The AbbVie Defendants also rely on the fact that Louisiana has not passed a statute that expressly addresses indirect purchaser standing. As can be seen in the above analysis in *Astra Zeneca*, while many states have passed "*Illinois Brick* repealer statutes*" to confer standing to indirect purchasers under their particular state's antitrust laws, other states have granted standing to indirect purchasers through jurisprudential statutory interpretation of their existing statutes. Thus, as

19

the State argues, and the trial court agreed with, the fact Louisiana, to date, has no "*Illinois Brick* repealer statute" is not determinative of indirect purchaser standing under Louisiana's antitrust law.

The State, in its brief, points to an Arizona case, *Bunker's Glass Co. v. Pilkington PLC*, 47 P.3d 1119 (Ariz. Ct. App.2002). In that case, the Arizona appellate court considered whether an indirect purchaser of goods may bring an action to recover damages resulting from the alleged price-fixing by the manufacturers of those goods. The court in *Bunker's Glass* noted that the Arizona legislature had not passed an *Illinois Brick* repealer statute, and commented:

> We, however, do not interpret the Arizona legislature's failure to explicitly authorize indirect purchaser claims as indicating its agreement with *Illinois Brick*. Silence on an issue is not an expression of legislative intent. Furthermore, the theory of legislative acquiescence "is limited to instances in which the legislature has considered and declined to reject the relevant judicial interpretation." Here, not only do we have no record that the Arizona legislature ever considered making *Illinois Brick* the law in Arizona, but its action in 1974 was presumably based on the holding in the *Western Liquid Asphalt* Cases. Therefore, we do not consider the legislature's post-1977 silence on the issue of indirect purchaser standing as an indication that it acquiesces in the holding of *Illinois Brick*.

*Id.* at 1128-29 (citations omitted).

The court further found there was nothing in the plain language of the Arizona antitrust statute to prohibit indirect purchasers from bringing suit, and concluded that "allow[ing] indirect purchaser actions best serves the goals and policies of Arizona's antitrust constitutional provision and statutes." *Id.* at 1129. The Arizona Supreme Court, with similar reasoning, affirmed the decision of the Arizona appellate court. *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99 (Ariz. 2003)

The State also cites to an Iowa case, *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 445 (Iowa 2002), wherein the Iowa court, citing as authority *Bunker's Glass*, stated:

> The state antitrust statute is clear on its face. The statute provides, "[a] person who is injured . . . by conduct prohibited under this chapter may bring suit." Iowa Code § 553.12. This statute does not restrict the class of persons who may bring suit under the Iowa Competition Law. Nothing in the statute says in order to seek redress for antitrust violations a purchaser must be directly injured. The legislature did not specifically limit standing to direct purchasers, but instead it simply authorized "[a] person who is injured" to sue. Legislative intent is determined by what the legislature said, not by what it did not say or might have said. *State v. Beach*, 630 N.W.2d 598, 600 (Iowa 2001); see *Bunker's Glass Co. v. Pilkington, plc*, 47 P.3d 1119, 1128 (Ariz. Ct. App.2002). Therefore, we do not regard our legislature's failure to explicitly authorize indirect purchasers to maintain a suit for antitrust violations as an expression of its agreement with Illinois Brick. *See Bunker's Glass Co.*, 47 P.3d at 1128-29. Given the clear, broad language of the state antitrust law, we conclude the Iowa Competition Law creates a cause of action for all consumers, regardless of one's technical status as a direct or indirect purchaser.

Considering the above reasoning, we find the trial court did not err in finding the *Illinois Brick* decision was based solely upon federal law considerations and does not create any presumption that indirect purchasers should be barred from state antitrust laws such as the LMA.

The trial court also concluded that the LMA provides that any person can bring an action under its umbrella. We find the plain wording of the LMA supports that finding. It provides "Any person who is injured . . . may sue in any court of competent jurisdiction . . ." La.R.S. 51:137. This clearly allows "any person" that is "injured" to sue, not just direct purchasers. As the State points out, allowing indirect purchasers to bring suit under antitrust laws (which is a common practice in numerous states) would not lead to any absurd consequences.

21

The State also maintains the LMA should be read in *pari materia* with LUTPA, as both deal with unfair methods of competition.  Just as La.R.S. 51:137 does in the LMA, La.R.S. 51:1409 of LUTPA provides a right of action to *any person*, natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Further, the Louisiana Supreme Court, in *Cheramie Servs. Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, p. 7 (La.4/23/10), 35 So.3d 1053, 1057-58, rejected jurisprudential limitations on the meaning of the word "person," stating:

> An evaluation of the words of this statute leads to the conclusion that, consistent with the definition and usage of the word "person," there is no such limitation on those who may assert a LUTPA cause of action.  Any such limitation that has found its way into the jurisprudence resulted without proper analysis of the statute. . . .

> Based on the language of the statute, which does not contain a clear, unequivocal and affirmative expression that the private right of action provided in LSA-R.S. 51:1409(A) extends only to business competitors and consumers, LUTPA does not exclude other persons who assert a "loss of money or ... property ... as a result of the use or employment by another person of an unfair or deceptive method, act, or practice."  Contrary holdings are hereby repudiated, because any limitation must be contained in the language of the statute.

Lastly, the State says this interpretation squares with the legislative history of the LMA.  It points to an analysis in the William Mitchell Law Review, in an article entitled "Your Honor, Tear Down That Illinois Brick Wall!  The National Movement Toward Indirect Purchasers Antitrust Standing and Consumer Justice," where it was explained that the Louisiana legislature back in 1890 (when Louisiana first adopted antitrust legislation) could not have possibly intended to preclude indirect purchasers from a right of action to bring claims:

> Given Illinois Brick's nonexistence at the time the Louisiana Act was enacted and that indirect purchasers could freely pursue federal

antitrust claims at that time, the Louisiana Legislature's intent could not have been to preclude indirect purchasers from pursuing price fixing claims. Authority suggesting such preclusion would not exist for almost another hundred years. Because the Louisiana Legislature's 1890 antitrust legislation did not specifically limit standing to direct purchasers (nor has it since, for that matter), the term "person" cannot be taken to preclude indirect purchasers, but must instead be read to include them. Thus, if the term "any person" was even subject to judicial interpretation, the Act could only be taken to confer natural persons antitrust standing, as they had standing at the time the Louisiana Act was enacted.

Accordingly, we find no error in the trial court's finding that neither the LMA nor LUTPA prevents the State from having a right of action to bring a claim as an indirect purchaser. Louisiana courts are bound to "give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." *McLane S., Inc. v. Bridges*, 11-1141, pp. 6-7 (La. 1/24/12), 84 So.3d 479, 483. Further, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9. The LMA's plain wording does not exclude any class of "person injured," nor require a person must have been directly injured.

3. *The trial court erred in failing to dismiss the State's LMA claims for no right of action to pursue a claim under the LMA on behalf of LDH and any other unnamed independent state agency because the State lacks a right of action to bring such claims.*

In this assignment of error, the AbbVie Defendants contend the State is not authorized to pursue these claims under the LMA. They base this argument on the belief that the State lacks a right of action to bring such claims under the Louisiana Supreme Court's holding in *State ex rel. Caldwell v. Molina Healthcare, Inc.*, 18-1768 (La. 5/8/19), 283 So.3d 472. The AbbVie Defendants assert that under *Molina,*

23

the Louisiana Department of Health (LDH), as an independent agency with the capacity to sue and be sued, is the appropriate party to bring any claims for alleged damages under the LMA. We disagree.

The AbbVie Defendants seem to take the position that because certain provisions of the LMA specifically grant certain powers to the Attorney General (La.R.S. 51:128 authorizes the Attorney General to "institute proceedings to prevent and restrain violations" of the LMA; La.R.S. 51:138 provides that "[a]ll suits for the enforcement of this Part shall be instituted in the district courts by the Attorney General, on his own motion"), the fact that La.R.S. 51:137 provides for "any person" to seek damages without reference to the State or Attorney General specifically is telling. We disagree with Defendants' belief that because the LMA gives specific additional powers to the State and Attorney General, that this somehow deprives the State of the rights the LMA provides to "any person" to seek damages. The LMA clearly provides the right to seek damages to "any person" and the State is under the law a person. Louisiana Civil Code Article 450 (emphasis added) provides that "Public things are owned *by the state or its political subdivisions in their capacity as public persons*." Louisiana Civil Code Article 453 (emphasis added) provides that "Private things are owned by individuals, other private persons, and *by the state or its political subdivisions in their capacity as private persons*." In this case, the State has been "injured" and is seeking damages as a result of that injury. Therefore, the State is not prevented from bringing an action for damages under the LMA.

The State also takes issue with the AbbVie Defendants' contention that the State seeks to recover funds on behalf of LDH. The State maintains it has never taken this position because none of the funds it seeks to recover were ever the distinct property of LDH, never part of LDH's budget, and were at all times part of the

24

State's general fund. Thus, the State is the proper party to bring the claims alleged in the Petition. The trial court did not err in concluding the "State is the real party in interest to bring these actions." The State, through the filing of this Petition, seeks to recover the overpayment of state funds, money that came from its general fund. The Medicaid program is funded by both state and federal funds. The State has an absolute and real interest in recovering the funds lost by the overpayment alleged in the Petition.

4. *The trial court erred in failing to dismiss the State's LMA claims based on prescription which properly belongs to LDH or other independent agencies.*

The AbbVie Defendants filed an Exception of Prescription on the basis that LDH and other independent agencies were the proper parties to bring this suit, and that prescription has long run on a civil action against any potential state agencies. However, with the trial court's finding, and this court's affirmation, that the State is the proper party to bring this suit, this argument is without merit. Pursuant to La.Const. art. 12, § 13, "Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law." Therefore, the exception of prescription was properly denied.

5. *The trial court erred in failing to dismiss all claims on behalf of unnamed state agencies as vague because the AbbVie Defendants cannot determine the claims brought against them and for what reasons.*

The AbbVie Defendants contend the trial court manifestly erred in overruling their Exception of Vagueness as to the unnamed "other state agencies" on whose behalf it asserts the State is bringing these claims. As discussed above, the State is not asserting it is bringing any claim on behalf of any state agency. Rather, the State asserts its claim in its own right, pursuant to La.R.S. 51:137 of the LMA. Thus, this argument is without merit.

The AbbVie Defendants also argue the Petition is impermissibly vague because they "cannot raise an exception under *Molina* that the claims properly belong to independent state agencies (against whom the prescriptive period has run). They assert they cannot "target discovery to defend themselves without knowing which state agencies are at issue." As the State notes in brief, this is an issue that can be addressed in the discovery process and is not something that requires the amendment of the pleadings through a vagueness exception. This assignment of error is without merit.

6. *The trial court erred in failing to dismiss the LMA claims brought against AbbVie, Inc., Allergan, PLC, Actavis, Inc., and Actavis, PLC for failure to state a cause of action because the Petition contains no allegations relating to these entities or allegations sufficient to state a prima facie case of successor liability.*

7. *The trial court erred in failing to find that the State's allegations as to the LMA claims against Allergan, PLC, Actavis, Inc., Actavis, PLC, and AbbVie, Inc. were impermissibly vague.*

The AbbVie Defendants' last two assignments of error pertain to the sufficiency of the pleadings against various corporate affiliates, in particular AbbVie, Inc., Allergan, PLC, Actavis, Inc., and Actavis, PLC. The primary contention in their argument is that the trial court's "reliance upon conclusory allegations as to 'all defendants'—without any factual allegations as to what these entities did—was error."

A review of the State's Petition reveals it alleges in detail Defendants' alleged conduct in their involvement in a conspiracy to inflate prescription drug prices in Louisiana by agreeing to delay the introduction of the generic equivalent to Loestrin into the Louisiana market. It is then set out in detail how these activities constituted illegal anticompetitive practices that led to an overpayment for the drug by the State of Louisiana, particularly through its Medicaid program. As the State notes,

La.Code Civ.P. art. 891, which deals with the form of a petition, requires that "[t]he petition . . . shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation." Ou review of the State's petition shows it clearly complies with the standards of La.Code Civ.P. art. 891.

Defendants' argues the State engaged in "group pleading" and did not separately set out facts that applied to each individual defendant. The trial court addressed this argument in its written reasons for judgment, finding the State's petition "alleges agreements, acquisitions and mergers by and among the defendants that may be sufficient to support a cause of action under a theory of successor liability or contract law." The State maintains its method of pleading in its petition is not legally deficient, particularly contending there are circumstances present which prevent it from knowing the exact role of each defendant in the conspiracy alleged. They cite to *Peters v. Amoco Oil Co.*, 57 F.Supp.2d 1268, 1277 (M.D. Ala. 1999) wherein the federal court reasoned:

> there are circumstances under which "a plaintiff may not be able to plead the precise role of each defendant when a group of defendants has acted in concert to cause the complained of injury." *Jackson v. First Fed. Sav.*, 70 F.Supp 863, 878 (E.D.Ark. 1988). Under such circumstances, "it is appropriate to plead the actions of the group and leave development of individual liability questions until some discovery has been undertaken, rather than to dismiss the plaintiff because he does not have what may be concealed information." *Id.*; *see also In re AnnTaylor Stores Securities Litig.*, 807 F.Supp. 990 (S.D.N.Y. 1992).

We agree with this analysis, and it cannot be expected for the State, prior to full discovery being completed, to know which of the several entities involved in this litigation is specifically responsible for the conduct alleged in the Petition. The facts alleged in the State's Petition are sufficient to put each named defendant on notice

27

of their potential liability and potential defenses. Therefore, we affirm the trial court's denial of the exceptions of no cause of action and vagueness as to these particular defendants.

***Assignment of Error as to the State's MAPIL Claim.***

In their writ application, which was not specifically addressed in their appellate brief, Defendants asserted the trial court erred in denying the Exception of No Cause of Action under MAPIL. Louisiana Revised Statutes 46:438.3 provides in pertinent part:

A. No person shall knowingly present or cause to be presented a false or fraudulent claim.

B. No person shall knowingly engage in misrepresentation or make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim.

C. No person shall knowingly make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the medical assistance programs, or to knowingly conceal, avoid, or decrease an obligation to pay or transmit money or property to the medical assistance programs.

D. No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

The trial court acknowledged in its reasons for judgment, that the State does not allege that a healthcare provider or a billing agent knowingly submitted a false claim. On this basis alone, Defendants maintain "the trial court's decision must be reversed and the MAPIL claim dismissed. We disagree.

A claim under MAPIL may also exist if a defendant conspired or attempted to defraud Medicaid through misrepresentation or by obtaining or attempting to obtain payment for a false or fraudulent claim. *See* La.R.S.46:438.3(D). This is the basis for the trial court's denial of the Exception of No Cause of Action, as it found

28

"the State does sufficiently allege that claims were submitted that were 'part of a pattern [by Defendants] of incorrect submissions in regard to material information or which is otherwise part of a pattern in violation of applicable federal or state law or rule.'" As the State's Petition set forth a MAPIL claim under the plain wording of the statute, the trial court properly denied the Exception of No Cause of Action.

## DECREE

For the foregoing reasons, the trial court's January 24, 2025 judgment overruling all exceptions filed by Defendants is affirmed. Costs of this appeal are assessed equally between Lupin Pharmaceuticals, Inc. and the AbbVie Defendants.

**AFFIRMED; WRITS DENIED.**